STATE, APPELLANT, *v.* HARPER, RESPONDENT.

(No. 3,333.)

(Submitted January 9, 1914. Decided January 26, 1914.)

[138 Pac. 495.]

*Criminal Law—"White Slave" Act—Females—Transportation for Immoral Purposes—Interstate Commerce—Jurisdiction.*

1.  Since Congress has exclusive jurisdiction to regulate interstate commerce; since the transportation of passengers from one state to another is interstate commerce, and since by the Mann Act (Chap. 395, 36 U. S. Stat. 825) the Congress has assumed to regulate the transportation of females from one state to another for immoral purposes, the state legislature had no power to enact a provision covering the same subject-matter, and therefore section 1, Chapter 1, Laws of 1911, is inoperative, and the district court properly sustained a demurrer to an information charging defendant with a violation of section 1 of such Act.

[As to validity of federal "White Slave Traffic Act," see note in Ann. Cas. 1913E, 909. As to construction of such Act, see note in Ann. Cas. 1913E, 913.]

*Appeal from District Court, Park County; Albert P. Stark, Judge.*

PETER HARPER was informed against for aiding a woman in obtaining transportation from Minnesota to Montana for an immoral purpose. A demurrer having been sustained to the information and defendant discharged, the state appeals. Affirmed.

Cause submitted on brief of counsel for Appellant, *Mr. D. M. Kelly,* Attorney General, and *Mr. J. H. Alvord,* Assistant Attorney General.

As contended by defendant below, it has even been held that Congress has plenary power over the subject of interstate commerce and that laws enacted by it are supreme. (*McCulloch* v. *Maryland,* 4 Wheat. (U. S.) 316, 4 L. Ed. 579; *Smith* v. *State of Alabama,* 124 U. S. 465, 31 L. Ed. 508, 8 Sup. Ct. Rep. 564; *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 57 L. Ed. 314, 44 L. R. A. (n. s.) 257, 33 Sup. Ct. Rep. 148; *Chicago etc. Ry. Co.* v. *Miller,* 226 U. S. 513, 57 L. Ed. 323, 33 Sup. Ct. Rep.

155; *Smith* v. *Turner*, 7 How. (U. S.) 287, 12 L. Ed. 703.) Nor can it be denied that the transportation of passengers is interstate commerce and, therefore, subject to regulation by Congress. However, all of these cases recognize the police power reserved to the states, the power to enact laws for the preservation of the health, property and morals of their citizens. (*Smith* v. *Turner, supra.*) In *Sherlock* v. *Alling*, 93 U. S. 99, 23 L. Ed. 819, it is said: "In conferring upon Congress the regulation of commerce, it was never intended to cut the states off from legislating on all subjects relating to the health, morals and safety of their citizens, though the legislation might indirectly affect the commerce of the country." Other cases adopting this same view are: *Austin* v. *State of Tennessee*, 179 U. S. 343, 45 L. Ed. 224, 21 Sup. Ct. Rep. 132; *Plumley* v. *Commonwealth of Massachusetts*, 155 U. S. 461, 39 L. Ed. 223, 15 Sup. Ct. Rep. 154; *Geer* v. *State of Connecticut*, 161 U. S. 519, 40 L. Ed. 793, 16 Sup. Ct. Rep. 600.

The broad general line of division between federal and state jurisdiction is "based upon the principle of national control of every subject affecting the country and the people as a whole and wherein uniformity of rule and control is desirable, if not indispensable, and of state control over subjects of local interest." (*Murray* v. *Chicago etc. R. Co.*, 62 Fed. 24.)

The state law called in question here is a prohibition upon the residents of this state to do certain things inimical to the health and morals of this state, in other words an exercise of the police power which may in an indirect fashion affect interstate commerce. But as seen by the numerous cases cited, it is a legitimate exercise of the legislative functions of this state and not necessarily an interference with interstate commerce, even though it might indirectly affect it. Nor can it be said that it is such a subject as of necessity requires exclusive national jurisdiction, regulation and control. It is essentially as much a matter of local interest as the liquor traffic, the drug traffic, or the tobacco traffic, and it is also as essentially a matter of interstate commerce as the transportation of these various com-

modities is, and the supreme court of the United States has held local regulations in these matters to be valid. (*Austin* v. *State of Tennessee,* 179 U. S. 343, 45 L. Ed. 224, 21 Sup. Ct. Rep. 132.)

The argument advanced that this court has, in the case of the *State* v. *Northern Pacific Ry. Co.,* 36 Mont. 582, 13 Ann. Cas. 144, 15 L. R. A. (n. s.) 134, 93 Pac. 945, indicated that a federal law upon the same subject as a state law would entirely abrogate the state law, is not substantiated by a careful reading of that decision, for the reason that the court did not at that time have before it the question of the validity of a state law upon a topic upon which the federal government had previously enacted a law, both being operative at the same time, and for the further reason that the only question which could have arisen in that case was whether the state had a right to regulate the relations of the carrier and its agents, a different question from the one involved here.

MR. JUSTICE SANNER delivered the opinion of the court.

By an information filed in the district court of Park county, the respondent, one Peter Harper, was accused of aiding a woman in obtaining transportation from Woodlake, Minnesota, to Livingston, Montana, for the purpose of concubinage, contrary to the provisions of section 1, Chapter 1, Laws of the Twelfth Legislative Assembly (Laws 1911, p. 3). To this information the respondent demurred, principally upon the ground that the court was without jurisdiction. The demurrer was allowed and, because the objection could not be avoided by another or amended information, the respondent was discharged. From the judgment thus entered, the state has appealed.

In ruling upon the demurrer the learned judge of the district court filed a memorandum which, omitting the formal parts, is as follows:

"The law under which this information is drawn was passed [1] by the twelfth legislative assembly, and was approved by the governor on January 28, 1911, and, it will be observed, in

section 1 assumes to prohibit the transportation of women and girls into this state from another state for immoral purposes, and to punish as a felony those who shall aid any such girl or woman in obtaining such transportation. Prior to the passage of this law the Congress of the United States had, on June 25, 1910, passed what is known as the Mann Act (Fed. Stat. Ann. 1912 Supplement, 419), in the second section of which it is provided that any person who shall aid or assist in procuring any ticket or any form of transportation to be used by any girl or woman in interstate commerce in going to any place for the purpose of prostitution or debauchery or for any immoral purpose shall be deemed guilty of a felony.

"The contention of counsel for the defendant is that the transportation of persons from one state to another, whatever the purpose, is interstate commerce; that the provisions of section 8, clauses 3 and 18, of the federal Constitution, which confer upon Congress the power to 'regulate commerce among the several states,' and 'to make all laws which shall be necessary and proper' for that purpose, are exclusive, at least when Congress has assumed to exercise its delegated powers; that, Congress having manifested its purpose in the Mann Act to take possession of the subject of the transportation of girls and women from one state to another for immoral purposes, and to punish those who might engage in such traffic or seek to aid in the same, the entire matter must be left under federal control, and that the Act under which the information against the defendant was drawn is the result of an unwarranted assumption of power by the legislature; that the legislature having no legal right to legislate upon the matter, its attempted Act could not confer upon the state courts any jurisdiction to punish an offender against the Act. The state law and the federal Act embody substantially the same provisions, and it is clear that it was the intention of Congress to assume control of the subject so far as its power extends.

"The transportation of freight or passengers from one state to another, or through more than one state, is interstate com-

merce; and the regulation thereof by the states is forbidden by the federal Constitution. Such commerce, whether carried on by individuals or corporations, is under the exclusive jurisdiction of Congress. (*State of Indiana* v. *Pullman Palace Car Co.* (C. C.), 16 Fed. 193, 11 Biss. 561.)

"In *Mondou* v. *New York etc. R. Co.* [223 U. S. 1, 56 L. Ed. 327, 38 L. R. A. (n. s.) 44, 32 Sup. Ct. Rep. 169], the supreme court of the United States, referring to commerce clauses of the Constitution, says: 'They have been considered by this court so often and under such varied connections that some propositions bearing upon the extent and nature of this power have come to be so firmly settled as no longer to be open to dispute, among them being (1) that the term "commerce" comprehends more than the mere exchange of goods. It embraces commercial intercourse in all its branches, including transportation of passengers and property by common carriers, whether carried by water or by land.' It is therefore not open to argument but that the transportation of passengers from one state to another is embraced within the meaning of the words 'interstate commerce,' and that Congress has the authority to regulate such transportation.

"In the case of *Hoke et al.* v. *United States* [227 U. S. 308, Ann. Cas. 1913E, 905, 57 L. Ed. 523, 43 L. R. A. (n. s.) 906, 33 Sup. Ct. Rep. 281], it is held: 'Congress, in the exercise of its power to regulate commerce, could lawfully enact the provisions of the White Slave Act of June 25, 1910 (36 Stats. at Large, 825, Chap. 395, U. S. Comp. Stats. Supp. 1911, p. 1343), making criminal the transportation of women or girls in interstate commerce for the purpose of prostitution or debauchery, or other immoral purposes, or the obtaining, aiding, or inducing of such transportation.'

"That the state law under consideration attempts to control a certain phase of interstate commerce is disclosed in the first three lines of the Act in question, which declare: 'The importation of women and girls into this state, or the exportation of women and girls from this state for immoral purposes, is hereby

prohibited.' We then have a state law and a federal law, each
dealing with the same subject, and are to inquire what effect
one has upon the other. Are they of equal potency and effect;
are they concurrent, or must one give way to the other?

"Chief Justice Marshall, in *McCulloch* v. *Maryland*, 4 Wheat.
(U. S.) 316, 4 L. Ed. 579, says: 'If any one proposition could
command the universal assent of mankind, we might expect it
would be this: that the government of the Union, though limited
in its powers, is supreme within its sphere of action. This would
seem to result necessarily from its nature. It is the govern-
ment of all; its powers are delegated by all; it represents all,
and acts for all. Though any one state may be willing to con-
trol its operations, no state is willing to allow others to control
them. The nation, on those subjects on which it can act, must
necessarily bind its component parts. But this question is not
left to mere reason; the people have, in express terms, decided
it by saying: "This Constitution and the laws of the United
States which shall be made in pursuance thereof," "shall be
the supreme law of the land," and by requiring that the mem-
bers of the state legislatures, and the officers of the executive
and judicial departments of the states, shall take the oath of
fidelity to it. The government of the United States, then,
though limited in its powers, is supreme; and its laws, when
made in pursuance of the Constitution, form the supreme law
of the land, "anything in the Constitution or laws of any state
to the contrary notwithstanding." ' Further on in the same
opinion, the court uses this language: 'This great principle is
that the Constitution and the laws made in pursuance thereof
are supreme; that they control the Constitution and laws of
the respective states, and cannot be controlled by them.'

"In *Smith* v. *State of Alabama*, 124 U. S. 465, 31 L. Ed. 508,
[8 Sup. Ct. Rep. 564], the supreme court of the United States
says: 'The grant of power to Congress in the Constitution to
regulate commerce with foreign nations and among the several
states, it is conceded, is paramount over all legislative powers
which, in consequence of not having been granted to Congress,

are reserved to the states. It follows that any legislation of a state, although in pursuance of an acknowledged power reserved to it, which conflicts with the actual exercise of the power of Congress over the subject of commerce, must give way before the supremacy of the national authority.'

"In *Covington & Cincinnati Bridge Co.* v. *Commonwealth of Kentucky* [154 U. S. 204, 38 L. Ed. 962, 14 Sup. Ct. Rep. 1087], the supreme court of the United States says: 'The adjudications of this court with respect to the power of the states over the general subject of commerce are divisible into three classes: First, those in which the power of the state is exclusive; second, those in which the states may act in the absence of legislation by Congress; third, those in which the action of Congress is exclusive, and the states cannot interfere at all.'

"It will be admitted without argument that the statute in question does not fall within the third class of cases above mentioned, and that the state under its reserved police power has the right, at least in the absence of congressional legislation, to control the matter of bringing persons into the state, there to engage in immoral practices. In the case of *Hoke et al.* v. *United States, supra,* the supreme court of the United States says: 'There is unquestionably a control in the states over the morals of their citizens, and, it may be admitted, it extends to making prostitution a crime. It is a control, however, which can be exercised only within the jurisdiction of the states, but there is a domain which the states cannot reach, and over which Congress alone has power; and, if such power be exerted to control what the states cannot, it is an argument for, not against, its legality.' It must likewise now be conceded that the statute does not fall within the first class of cases above mentioned, for the reason that in *Hoke* v. *United States, supra,* the supreme court has held that the Mann Act is a valid exercise of the power of Congress under the commerce clause of the federal Constitution.

"Having, by the process of elimination, removed the Act in question from the first and third classifications made by the supreme court in the *Covington & Cincinnati Bridge Co. Case,* it

follows, of necessity, that it must come under the second class—
that is, that the power attempted to be exercised is one of those
instances in which the state may act in the absence of legislation
by Congress—and it remains only to determine what effect the
congressional Act has upon the state Act. This subject has been
passed upon in a number of recent cases, all holding that in
those instances in which the state has power to act in the ab-
sence of legislation by Congress, when Congress does, by its Act,
manifest a purpose to take possession of a subject within its
power under the commerce clauses of the Constitution, all state
policies, regulations, and laws upon the subject are superseded
by the congressional Act. (*Adams Express Co.* v. *Croninger*
[226 U. S. 491, 57 L. Ed. 314, 44 L. R. A. (n. s.) 257, 33 Sup.
Ct. Rep. 148] ; *Chicago, B. & Q. Ry. Co.* v. *Miller* [226 U. S. 513,
57 L. Ed. 323, 33 Sup. Ct. Rep. 155] ; *Northern Pac. Ry.* v. *State
of Washington* [222 U. S. 370, 56 L. Ed. 237, 32 Sup. Ct. Rep.
160]. The same holding has been made by the supreme court
of Montana in the recent case of *Melzner* v. *Northern Pac. Ry.
Co.,* 46 Mont. 277, 127 Pac. 1002.

"Counsel for the state, however, insists that both of these
Acts remain in effect, and the jurisdiction over the offense
named is concurrent in the federal and state courts; that the
United States and the state being different sovereignties, the
same Act may be an offense against both. This might be true
in some instances, but here we are confronted with the fact that,
so far as the regulation of interstate commerce is concerned,
the states have expressly surrendered the entire subject to the
general government, and that, when the general government sees
fit to exercise the powers delegated and surrendered to it by the
states, the state is precluded from saying that the subject, or
any matter connected therewith, is under the concurrent control
of the two sovereignties. The case of *State* v. *Northern Pacific
Ry. Co.,* 36 Mont. 582 [13 Ann. Cas. 144, 15 L. R. A. (n. s.) 134,
93 Pac. 945], appears to be an answer to these contentions of
counsel. In that case the state sought to punish as a crime the
violation of what is known as the Sixteen Hour Law, and, while

a conviction was sustained on the ground that the federal law covering the same matter had not become effective at the time of this prosecution, the court, in effect, holds that, as soon as the federal law should become effective, prosecutions under the state law could no longer be maintained, thus applying to criminal prosecutions the same rules which have been announced in the civil cases above cited.''

This disposition of the matter as presented to the district court is complete. The attorney general, however, contends before us that the position of the district court is untenable, because the state statute in question is not an attempt to directly regulate interstate commerce, since it does not impose any restriction, tax, burden, condition, or prohibition upon the carriers, or upon the freedom of individuals moving from state to state; and therefore, being a reasonable exercise of the reserved police power, it is not open to attack as an interference with interstate commerce. In other words, the statute addresses itself only to citizens of this state upon a matter within the range of its police powers. The argument has some plausibility and might command respect, were it not for the direct answer to be found in *Hoke et al.* v. *United States,* cited above. The Mann Act also addresses itself to the citizens of this state in, common with the citizens of all the other states, and it is leveled not merely at the person who transports, but also at the person ''who shall cause to be transported or aid or assist in obtaining'' interstate transportation for ''any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose.'' The state statute provides that ''whoever shall * * * aid any such woman or girl in obtaining transportation to * * * this state for the purpose of prostitution or concubinage, or for any other immoral purpose, shall be deemed guilty of a felony,'' *etc.* The only difference in these provisions is that where the Mann Act uses the word ''debauchery'' the state statute says ''concubinage''; but this difference is not essential. (*Athanasaw et al.* v. *United States,* 227 U. S. 326, Ann. Cas. 1913E, 911, 57 L. Ed. 528, 33 Sup. Ct. Rep. 285.) Now,

if, as is the case, the very provision of the Mann Act above re-
ferred to has been authoritatively construed to be a direct regu-
lation of interstate commerce, how can it be said that the like
provision of the state statute is not of the same character?

The assertion that the state statute imposes no restriction, con-
dition, or prohibition upon the freedom of individuals in mov-
ing from state to state would seem to carry its own answer.
When the statute says that importation into, or exportation
from, this state of women and girls for immoral purposes is un-
lawful, it characterizes not merely the act of the person who
furthers the importation or exportation, but also the act of the
person imported or exported; and the unlawful character of the
act of the person imported or exported is not affected by the
circumstance that the penalties of the law are not visited upon
her.   A person is not at liberty to do an unlawful thing.   In the
absence of both the federal and state statutes, persons would be
at liberty to come into and go out of this state, without regard
to sex or purpose.   Freedom of movement implies the right to
receive assistance when such assistance may be had.   To deny
to A the right to assist B is to deny to B the right to be assisted
and so restrict the movements of B.   In the case of women and
girls who come and go for immoral purposes, this is the laudable
purpose of both the state and federal enactments.   "If the
facility of interstate transportation can be taken away from the
demoralization of lotteries, the debasement of obscene literature,
the contagion of diseased cattle or persons, the impurity of food
and drugs, the like facility can be taken away from the sys-
tematic enticement to, and the enslavement in prostitution and
debauchery of, women, and more insistently of girls." (*Hoke
v. United States, supra.*)

While the transportation of persons is a branch of legitimate
commerce, to knowingly transport or aid in the transportation
of women and girls for immoral purposes is a proceeding which
the best sense of all the world will condemn, and which as a
menace to its own welfare, any state may prohibit under its
police power.   Such legislation is doubtless effective so long as

48 Mont.—30

Congress remains silent on the subject. (*Morgan etc. S. S. Co. v. State Board of Health,* 118 U. S. 455, 30 L. Ed..237, 6 Sup. Ct. Rep. 1114; *Cooley* v. *Post Wardens of Philadelphia,* 12 How. 299, 318, 13 L. Ed. 996; *Covington etc. Bridge Co.* v. *Kentucky, supra.*)

The fallacy of appellant's position here is that, if a state statute is an exercise of the police power, it may be enforced, although it be a direct regulation of interstate commerce in a respect covered by federal legislation. "The line of distinction between that which constitutes an interference with commerce and that which is a mere police regulation, is sometimes exceedingly dim and shadowy, and it is not to be wondered at that learned jurists differ when endeavoring to classify the cases which arise. It is not doubted that Congress has the power to go beyond the mere regulations of commerce which it is accustomed to establish, and to descend to the most minute directions, if it should be deemed advisable; and that to whatever extent the ground shall be covered by those directions, the exercise of state power is excluded." (Cooley's Constitutional Limitations, 7th ed., 856.)

Of certain quarantine regulations of the state of Louisiana it was remarked by the supreme court of the United States: "While it may be a police power in the sense that all provisions for the health, comfort, and security of the citizens are police regulations, and an exercise of the police power, it has been said more than once in this court that, even where such powers are so exercised as to come within the domain of federal authority as defined by the Constitution, the latter must prevail." (*Morgan etc. S. S. Co.* v. *State Board of Health, supra.*)

The provision before us declares that, under certain circumstances, women and girls are not legitimate subjects of commerce. No one will dispute it, but the controlling power to make that declaration rests with Congress; otherwise the power vested in Congress to regulate interstate commerce, may be circumscribed by the ability of the state to determine what shall or what shall not be regulated. "The police power would not only be a

formidable rival, but, in a struggle, must necessarily triumph over the commercial power, as the power to regulate is dependent upon the power to fix and determine upon the subjects to be regulated." (*License Cases (Peirce* v. *New Hampshire*) 5 How. 597, 600, 12 L. Ed. 256, 298.)

The foregoing is, of course, intended to apply only to those portions of the first section of Chapter 1, Laws of 1911, which relate to transportation into this state from without, and must not be taken as an intimation against the validity of any other provision of that section or of any other section of that Act.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

