STATE, RESPONDENT, v. REED, APPELLANT.

(No. 3,826.)

(Submitted January 24, 1917.   Decided February 19, 1917.)

[163 Pac. 477.]

*Criminal Law—Females—Transportation for Immoral Purposes —Jurisdiction—Donlan "White Slave" Act—Information— Counts—Constitutional Guaranties—Searches and Seizures— Instructions — Hearsay Evidence — Opinions — Expert Testimony—Inadmissibility.*

Criminal Law—Donlan "White Slave" Act—Females—"Immoral Purposes."
1.   Defendants attempted to entice a seventeen-year old girl to accept a position in a hotel in a neighboring state, informing her that the place was a sporting-house, and that her duties would be to dance, play cards, drink beer and entertain men.   The evidence tended to show that the place was not one where a girl could stay for any length of time and be respectable.   *Held* that the purposes of the employment were "immoral" within the meaning of section 2 of the Donlan Act (Laws 1911, Chap. 1).

Same—Attempt—When Complete—Jurisdiction.
2.   An attempt to induce a female to take up her residence in another state for immoral purposes which was complete before transportation had commenced, was punishable under the Donlan, and not under the Mann, Act.

Same—Information—Counts—Evidence—Appeal and Error.
3.   Where defendant in a criminal prosecution made no attempt during the trial to have three of four counts of the information withdrawn from the consideration of the jury because unsupported by the evidence, he was not in a position on appeal to raise the question whether a general verdict of guilty can stand where only one of a number of counts has support in the evidence.

Same—Evidence—Searches and Seizures—Constitutional Guaranties.
4.   The admission in evidence, without defendant's consent, of a letter taken from his private papers, access to which was obtained by keys obtained from his person by officers, did not deprive defendant of his constitutional rights to be secure from unreasonable searches and seizure, and to not be compelled to testify against himself.

Same—Information—Amendment—Harmless Error.
5.   Alleged error in permitting the state to amend the information, at the close of all the testimony, by inserting the real name of the prosecutrix for that of "Jennie Doe," was harmless.

Same—Instructions—"Immoral Purposes"—Reversible Error.
6.   An instruction defining "immoral purpose" as used in section 2 of the Donlan Act, *supra*, as "one which is violative of conscience or moral law inconsistent with purity, rectitude or good morals, or hostile to the welfare of the general public," *held* prejudicially erroneous.

Same—Letters—Hearsay Evidence.
7. Letters describing and characterizing the place to which a girl was sought to be transported for immoral purposes were inadmissible as hearsay.

Same—Opinion Evidence—When Improper.
8. The character of a place to which a girl was attempted to be transported for immoral purposes was not susceptible of proof by expert testimony in the form of opinions.

[As to whether expert witness may give opinion as to ultimate fact, see note in Ann. Cas. 1914B, 191.]

*Appeal from District Court, Silver Bow County; Michael Donlan, Judge.*

J. E. REED was found guilty of a violation of the Donlan Act (Laws 1911, Chap. 1). From the judgment of conviction and from an order denying him a new trial, he appeals. Reversed and remanded.

*Mr. Harry Meyer,* for Appellant, submitted a brief and argued the cause orally.

*Mr. J. B. Poindexter,* Attorney General, and *Mr. C. S. Wagner,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Woody,* Assistant Attorney General, argued the cause orally.

The defendant was convicted of an attempt. Ordinarily interstate commerce begins when the subject thereof is on board the train destined for interstate traffic. (*State v. Missouri Pac. R. Co.,* 81 Neb. 15, 115 N. W. 614; *Reid v. Southern R. Co.,* 153 N. C. 490, 69 S. E. 618; *In re Greene,* 52 Fed. 104; *United States v. Boyer,* 85 Fed. 425; *The Daniel Ball,* 77 U. S. (10 Wall.) 557, 19 L. Ed. 999; *Bennett v. American Express Co.,* 83 Me. 236, 23 Am. St. Rep. 774, 13 L. R. A. 33, 22 Atl. 159.) It is for acts committed by the defendant prior to the boarding of the train by the prosecuting witness that the defendant was evidently convicted. No case directly in point has been found showing that state courts entertain jurisdiction in such cases, but the following are cited as showing the construction placed upon the Mann Act by the federal courts: *Bennett v. United States,* 194 Fed. 630, 114 C. C. A. 402; *United States v. Flaspoller,* 205 Fed. 1006;

*Hoke* v. *United States,* 227 U. S. 308, Ann. Cas. 1913E, 905, 43 L. R. A. (n. s.) 906, 57 L. Ed. 523, 33 Sup. Ct. Rep. 281; *Athanasaw* v. *United States,* 227 U. S. 326, 327, Ann. Cas. 1913E, 911, 57 L. Ed. 528, 33 Sup. Ct. Rep. 285; *Wilson* v. *United States,* 232 U. S. 563, 58 L. Ed. 728, 34 Sup. Ct. Rep. 347.

MR. JUSTICE SANNER delivered the opinion of the court.

By a general verdict of guilty J. E. Reed was convicted of a violation of what is known as the Donlan Act (Sess. Laws 1911, Chap. 1), and from the judgment entered on the verdict, as well as from an order denying him a new trial, he appeals.

The information is in four counts; but the state concedes that under the evidence the conviction can stand, if at all, only upon the first count, which charges that the appellant "did willfully, unlawfully, and feloniously attempt to induce, entice, procure and compel Jennie Doe, a female person, to reside with Joseph Kandelhofer for immoral purposes," contrary to section 2 of said Act.

The facts, as presented on behalf of the prosecution by evidence to which no serious exception is taken, are substantially these: Diamondville, Wyoming, is a mining camp consisting largely of Italians and Austrians, and there one Joseph Kandelhofer maintains a "boarding-house"; this place has two stories, and on the ground floor are a barroom, leading off from which is a hallway with doors on each side, and farther on a diningroom; the doors leading off from the hallway give entrance to a wineroom and to bedrooms; the wineroom is a dance-hall, and the bedrooms are occupied by miners who lodge at the place; girls and young women were employed there, whose principal duties were to dance with men in the wineroom, drink with men at the bar, and otherwise, "entertain" the men who frequented the place, during all hours from 7 P. M. to 8 A. M. On or about February 17, 1915, the appellant, who was conducting an employment agency at Butte, was applied to by Dorothy Burger, a girl seventeen years old, for a position; he said he could furnish her a position as waitress in a hotel kept by Joseph Kandel-

hofer at Diamondville, Wyoming, the wages to be $30 per month, with room and board. She accepted, and he promised to have transportation for her the next day. On the next day he said he had her ticket, that the place was a sporting-house, and that her duties would be to dance, play cards, drink beer, and entertain men; she then consulted a woman friend, who in turn reported to the chief of police, and he, after satisfying himself as to the character of the place, planned that she should take the ticket and board the train en route for Diamondville, but be taken off at Silver Bow; she again sought the appellant, who gave her a letter addressed to Joseph Kandelhofer at Diamondville, Wyoming, and escorted her to the station, where he got and gave her the ticket, and she went upon the train; she was met at Silver Bow by officers, left the train, and returned to Butte. The letter just referred to was one of introduction, and also a notification to Kandelhofer that another girl "of good appearance," named Bessie Krambeal, would come on receipt of transportation; this girl, engaged by the appellant to go to the same house, had been told by him that among her duties she would have to dance and entertain men; that the place was "a kind of a boarding-house with a bar in it and a dance-hall," and she had been given to understand that it was "not a very moral place"; her arrest on the following day prevented her from going. Other evidence, to which exception is taken, tends to show that the place was not one where a girl could live for any length of time and be respectable; that it was, after the events here involved, closed as a public nuisance; and that the appellant knew that girls who were "good-lookers" rather than efficient cooks and waitresses were the chief desideratum there.

1. The first contention is that no case was made for judicial [1] cognizance because the purposes for which Dorothy Burger was to go to Diamondville were not immoral purposes within the meaning of the Donlan Act. In *State* v. *Harper,* 48 Mont. 456, Ann. Cas. 1915D, 1017, 51 L. R. A. (n. s.) 157, 138 Pac. 495, we took occasion to show the similarity of object of both the Donlan Act, as operative within this state, and the Mann Act of the

national Congress, as operative in interstate commerce—such object being to suppress the traffic in women and girls for immoral purposes. In the Mann Act the thing forbidden is the interstate transportation of women "for prostitution or debauchery, or any other immoral purpose," while the Donlan Act is directed to every form of traffic in women "for prostitution or concubinage, or any other immoral purpose"; and we think it manifest that the meaning of the phrase "or any other immoral purpose" is the same in each Act. Appellant insists that the rule *ejusdem generis* must be applied and the reference taken to mean immoral acts of like character. We think the rule *ejusdem generis* does apply, but its correct application cannot absolve appellant upon the circumstances here presented. In *Athanasaw* v. *United States,* 227 U. S. 326, Ann. Cas. 1913E, 911, 57 L. Ed. 528, 33 Sup. Ct. Rep. 285, the national supreme court applied the Mann Act to a state of facts which, so far as undisputed, was not materially different from that at bar, and said: "The instructions of the court were justified by the statute. It is true that the court did not give to the word 'debauchery' or to the purpose of the statute the limited definition and extent contended for by defendants, nor did the court make the guilt of the defendants to depend upon having the intent themselves to debauch the girl or to intend that some one else should do so. In the view of the court that statute had a more comprehensive prohibition and was designed to reach acts which might ultimately lead to that phase of debauchery which consisted in 'sexual actions.' * * * The court put it to the jury to consider whether the employment to which the defendants called the girl and the influences with which they surrounded her tended 'to induce her to give herself up to a condition of debauchery which eventually and naturally would lead to a course of immorality sexually.' * * * The plan and place justified the instructions. * * * The employment to which she was enticed was an efficient school of debauchery of the special immorality which defendants contend the statute was designed to cover." This authoritative interpretation of the phrase "or any other immoral purpose," as

used in the Mann Act, is equally apt as an interpretation of the like phrase as it appears in the Donlan Act. We adopt it, and say that the employment to which the appellant tried to entice Dorothy Burger was an efficient school for that special immorality, to-wit: Prostitution or concubinage, which the Donlan Act was clearly designed to cover.

2. It is next contended that the court below had no jurisdiction, because the transaction, if culpable at all, was within the Mann Act. As stated above, the conviction was for an attempt, under section 2 of the Donlan Act, to induce or entice the girl in question to reside with Joseph Kandelhofer for immoral purposes. This offense, complete before the ticket was furnished or transportation commenced, was wholly intrastate and without the purview of the Mann Act or any other national legislation. It is quite true that to furnish a ticket or cause interstate transportation for immoral purposes to commence, subjects the offender to prosecution under the Mann Act. But it is doubtful if the plan of the appellant, frustrated by the girl and the police, could be so prosecuted; in any event, it could not prevent the state from punishing an infraction of its own laws, complete without regard to such transportation, and performed wholly within its own boundaries.

3. The appellant vigorously insists that the conviction cannot stand because the information was in four counts, three of which were unsupported by the evidence and, as the verdict was general, it cannot be told whether the conviction was for the offense as specified in the count supported by the evidence, or for the offense as specified in one of the counts not so supported. To sustain his contention he invokes the statement of this court in *Martin* v. *Northern Pac. R. Co.*, 51 Mont. 31, 38, 149 Pac. 89, 91, as follows: "There is nothing in the general verdict itself, or in the entire record before us, from which it can be determined upon which of the three counts submitted the jury made their finding. We are unable to agree with counsel for respondent that the authorities cited by him sustain the proposition that, if the complaint contains one good count, the presump-

tion will be indulged that the jurors determined that fact and founded their verdict upon it, rather than upon the counts which fail to state facts sufficient to warrant recovery. Jurors are not familiar with the rules governing practice and procedure, but have a right to assume that any count submitted to them by the court will justify recovery if the evidence supports it.'' Very clearly the question thus discussed is not the question sought to be raised here. The question sought to be raised here is: Can a general verdict of guilty stand where the information shows four counts, all good as a matter of pleading, but only one of which is supported by the evidence? And that question the appellant is in no position to raise, because he did not seek in any way upon the trial to have the unsupported counts withdrawn from the consideration of the jury.

4. Upon his arrest the appellant was searched, and among the [4] things taken from his person were certain keys. With these keys the officers obtained access to his private papers and secured certain letters, among them the copy of one dated January 6, 1915, addressed to Isa Goldstein, at Helena, which discussed the traffic in girls for Kandelhofer's place; this letter the state offered, and the court over objection received in evidence. The principal ground of objection was, and it is here urged, that as the letter was taken without appellant's consent, it could not be used against him, under his constitutional right to be secure from unreasonable searches and seizures and to not be compelled to testify against himself. There was no merit in the objection. (*State* v. *Fuller,* 34 Mont. 12, 9 Ann. Cas. 648, 8 L. R. A. (n. s.) 762, 85 Pac. 369; *Adams* v. *New York,* 192 U. S. 585, 48 L. Ed. 575, 24 Sup. Ct. Rep. 372; *Smith* v. *State,* 144 Ga. 679, 87 S. E. 893; *Id.,* 17 Ga. App. 693, 88 S. E. 42; note, L. R. A. 1916E, 715.)

5. It is assigned for error that at the close of all the testimony [5] the court permitted the information to be amended by inserting the name ''Dorothy Burger'' in lieu of ''Jennie Doe.'' The record shows affirmatively that the appellant, as well as the county attorney, knew from the time the information was filed

that "Jennie Doe" was a fictitious name intended to describe the witness Dorothy Burger, and the case was tried throughout on that basis. The information was subject to the amendment (Rev. Codes, sec. 9174), and the conviction could have stood unaffected by the misnomer, had the amendment not been made (Rev. Codes, sec. 9157). The appellant was therefore not prejudiced by the ruling.

6. Over the appellant's objection the court gave instruction X,
[6] as follows: "You are instructed that the word 'immoral' is defined to be anything inconsistent with rectitude, purity or good morals, or anything contrary to the conscience or the moral law, or anything hostile to the welfare of the general public; and the word 'purpose' is the object, effect or result aimed at, intended or attained. Therefore an immoral purpose is one which is violative of conscience or moral law, inconsistent with purity, rectitude or good morals, or hostile to the welfare of the general public." As an abstract definition of immorality in the largest sense no exception could, perhaps, be taken to this instruction; but it should be clear from what is said above that as an interpretation of the phrase "immoral purposes," as used in the Donlan Act, it was a palpable and prejudicial misdirection of the jury.

7. The remaining assignments relate to matters of evidence. Some of these are entirely without merit, and others do not suggest that the appellant could have suffered any prejudice; but this cannot be said of all of them. The court, for instance, permitted to be introduced a letter from one Bertolino, post-
[7] master of Diamondville, to Jerry Murphy, chief of police at Butte, describing and characterizing Kandelhofer's place, together with certain newspaper clippings—damaging by reason of their contents and their mode of expression, and also received, over objection, a telegram from one Vicars, chief of police at Diamondville, to Mr. Murphy, to this effect: "Four girls deported from Kandelhofer house last week. My advice not to send girls." These were all clearly hearsay, and were not, as the court seems to have thought, made admissible by anything

which occurred in Murphy's cross-examination. Rulings were **[8]** also made permitting witnesses to express opinions of the Kandelhofer place, obviously wrong, since this was not a matter of expert testimony, but rather for inference by the jury from the facts laid before them, touching the arrangement of the place and the things which commonly occurred there. We do not deem it necessary to discuss these assignments any further, for it is highly improbable that the questions raised by them will recur.

The judgment and order appealed from are reversed, and the cause is remanded for retrial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.