IN RE EDWARD J. SQUIRES.

May Term, 1945.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 2, 1945.

*R. Lawlor Cooper* for the petitioner.

*Alban J. Parker,* Attorney General, for the State.

BUTTLES, J. This is a petition for a writ of habeas corpus brought directly to this Court, seeking release from confinement in the state prison at Windsor. On August 25, 1943, in Bennington Municipal Court the petitioner was convicted, on a plea of guilty, to violation of the first clause of P. L. 8618 which provides for the punishment of a "person who induces, entices or procures a female person to come into the state or to go from the state for the purpose of prostitution or for any immoral purpose." On the same day sentence was imposed of imprisonment in the states prison for not less than three nor more than seven years and he was forthwith committed. By this proceeding the petitioner has challenged the legality of his conviction and commitment on various grounds, only one of which is for our consideration, since it is the only one that has been briefed and argued. *In re Everett's Will,* 105 Vt 291, 306, 166 A 827. It is contended that the statute under which the petitioner was convicted is unconstitutional because in conflict with the Act of Congress of June 25, 1910, known as the White Slave Traffic or Mann Act (USCA Title 18 §§ 397 to 404) by which, it is asserted, Congress has exercised its power under the commerce clause of the federal constitution over the same subject.

The appropriateness of a habeas corpus proceeding to determine this contention is not and could not be successfully questioned. The weight of authority is that a court may determine in a habeas corpus proceeding the constitutionality of the statute under which the petitioner is held and, if it proves to be unconstitutional, discharge him irrespective of the stage of the prosecution against him under the statute, irrespective of whether he has been convicted, and likewise irrespective of any other relief which may be available to him. 25 Am Jur Habeas Corpus, § 29. The reason for this rule is thus tersely stated in *Ex parte Siebold,* 100 US 371, 376, 25 L ed 717: "An unconstitutional law is void and is as no law. An offense created by it is not a crime. A conviction

under it is not merely erroneous, but is illegal and void and cannot be a legal cause of imprisonment."

This view is supported by our own cases. *In re Hook,* 95 Vt 497, 503, 115 A 730, 19 ALR 610; *In re Dawley,* 99 Vt 306, 314, 131 A 847; *In re Dowar,* 102 Vt 340, 344, 148 A 489, 490. In the last named case the petitioner had refused to disclose the source from which he had obtained liquor and was committed for contempt. He sought relief by habeas corpus proceedings, alleging the unconstitutionality of the statute which required a disclosure. This Court said, citing the Siebold case supra, that the writ of habeas corpus "affords an appropriate means of attacking the jurisdiction of a court, not only its jurisdiction over the person or the subject matter, but its jurisdiction to make the very order or render the particular judgment called in question. So if it turns out that the statute under which the justice of the peace ordered the petitioner to disclose is in conflict with constitutional provisions, he was wholly without jurisdiction to demand the testimony sought, or to make the order of commitment. In that case the order was not merely erroneous, it was illegal and void and could not be the basis of a lawful imprisonment; and it would be the duty of this Court, in these proceedings, to set the prisoner free, though we thereby exercise a jurisdiction more or less appellate in character."

In considering the constitutional question every presumption is to be made in favor of the constitutionality of the statute, and it is not to be adjudged unconstitutional without clear and irrefragable evidence that it infringes the paramount law. *State v. Clement Nat'l. Bank,* 84 Vt 167, 200, 78 A 944, Ann Cas 1912 D 22; *Gross* v. *Gates,* 109 Vt 156, 164, 194 A 465; *Waterbury* v. *Melendy,* 109 Vt 441, 447, 199 A 236. It is well settled that Congress, in the exercise of its constitutional power to regulate foreign and interstate commerce could lawfully enact the White Slave Traffic Law. *Hoke* v. *United States,* 227 US 308, 33 S Ct 281, 57 L ed 523; *Athanasaw* v. *United States,* 227 US 326, 33 S Ct 285, 57 L ed 528, Ann Cas 1913 E 911. It is also settled that the law applies to purposes of private immorality unaccompanied by expectation of pecuniary gain, as well as to purposes of commercialized vice. *Caminetti* v. *United States,* 242 US 470, 37 S Ct 192, 61 L ed 442, LRA 1917 F 502, Ann Cas 1917 B 1168.

The petitionee contends that the State was not without

jurisdiction in this case even though the federal government might also have jurisdiction and the same acts of the respondent might also be punishable under the federal law. It is true that the same act may constitute a crime equally against the United States and the State, subjecting the guilty party to punishment under the laws of each, provided the act is one over which both sovereignties have jurisdiction. *State* v. *O'Brien,* 106 Vt 97, 104, 105, 170 A 98; *United States* v. *Lanza,* 260 US 377, 43 S Ct 141, 142, 143, 67 L ed 314. Such concurrent or parallel jurisdiction has been upheld with respect to violations of the former state and national liquor prohibition laws, as in the two cases above cited; violations of a state and a national law against counterfeiting or possessing or passing counterfeit bank notes, as in *State* v. *Randall,* 2 Aikens 89; of a state law against larceny, and a federal statute against embezzlement from a national bank as in *Commonwealth* v. *Barry,* 116 Mass 1; of a state and a national law against harboring slaves and preventing their recapture, as in *Moore* v. *Illinois,* 14 How. 13, 14 L ed 306, 309.

There is, however, an important distinction between such cases where both sovereignties have jurisdiction and cases where Congress has acted under the paramount authority given to it by the Constitution to regulate commerce with foreign nations and among the several states. The grant in the Constitution of that power to Congress, it is conceded, is paramount over all legislative powers which, in consequence of not having been granted to Congress, are reserved to the states. It follows that any legislation of a state, although in pursuance of an acknowledged power reserved to it, which conflicts with the actual exercise of the power of Congress over the subject of commerce must give way before the supremacy of the national authority. *Smith* v. *Alabama,* 124 US 465, 8 S Ct 564, 566, 31 L ed 508. It follows that to the extent that Congress has prohibited interstate transportation of women for immoral purposes, and activities incidental to such transportation, the State is deprived of jurisdiction which it otherwise might have, under its police power, of the same subject matter. However, a prosecution may be had under a state statute for soliciting or inducing a female to leave the state for an immoral purpose where, by the terms of the statute, the offense is complete where the solicitation is made or the inducement offered without any step being taken toward the transportation of the female to another

place. 42 Am Jur Prostitution § 7, page 266. State statutes which do not cover the same subject matter do not conflict with the federal statute so as to be invalid. 15 CJS Commerce, § 126, page 490.

In considering whether there is such conflict it is necessary to consider just what is prohibited by the federal act. It is only the second, third and fourth sections of that act that could be applicable (18 USCA §§ 398, 399 and 400). § 398 reads:

> "Any person who shall knowingly transport or cause to be transported, or aid or assist in obtaining transportation for, or in transporting, in interstate or foreign commerce, or in any Territory or in the District of Columbia, any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice; or who shall knowingly procure or obtain, or cause to be procured or obtained, or aid or assist in procuring or obtaining, any ticket or tickets, or any form of transportation or evidence of the right thereto, to be used by any woman or girl in interstate or foreign commerce, or in any Territory or the District of Columbia, in going to any place for the purpose of prositution or debauchery, or for any other immoral purpose, or with the intent or purpose on the part of such person to induce, entice, or compel her to give herself up to the practice of prostitution, or to give herself up to debauchery, or any other immoral practice, whereby any such woman or girl shall be transported in interstate or foreign commerce, or in any Territory or the District of Columbia, shall be deemed guilty of a felony" etc.

§ 399 is directed against the persuasion, inducement, enticement and coercion of any woman or girl to go from one place to another in interstate or foreign commerce, whether with or without her consent, to engage in the practices and for the purposes stated in the preceding section, and provides that anyone "who shall thereby

knowingly cause, or aid or assist in causing, such woman or girl to go and to be carried or transported as a passenger upon the line or route of· any common carrier or carriers in interstate or foreign commerce, or any Territory or the District of Columbia," shall be punished as therein provided. § 400 is similar to § 399 except that it applies only in a case involving a girl under the age of eighteen years and the penalty is greater. Here also it is an element of the offense that the girl shall be knowingly induced or caused "to go and to ,be carried or transported as a passenger in interstate commerce upon the line or route of any common carrier or carriers." In the present case the girl involved was fifteen years of age.

An offense under any of these sections is not complete if there is no interstate transportation of the woman. Under § 399 as well as under § 400, such transportation must be by a common carrier, *Cottabellota* v. *United States,* 45 F2d 117, but § 398 is violated if there is interstate transportation for the prescribed purposes by privately owned automobile. *Sloan* v. *United States,* 287 F 91; *Holden* v. *United States,* 23 F2d 678. But the challenged clause of P. L. 8618 penalizes only inducing, enticing or procuring the female person to come into the state or to go from the state, regardless of how she shall come or go and without requiring that she shall be transported. Of course it might be said that a woman is not induced, enticed or procured to go from the state unless she at least starts to go. Nevertheless the inducing is an act separate and distinct from the going and is preliminary thereto. It is apparent that it must be accomplished before the journey commences. That further representations and inducements might later be made would be immaterial, as was held in *State* v. *Wood,* 136 La 658, 67 S 542.

Few cases are found which bear directly on the question here involved. In *State* v. *Harper,* 48 Mont 456, 138 P 495, 51 LRANS 157, Ann Cas 1915 D 1017, it was held in a well considered opinion that a state statute which "assumes to prohibit the transportation of women and girls into this state from another state for immoral purposes" was in conflict with the federal act and for that reason unconstitutional and void. In a later case, *State* v. *Reed,* 53 Mont 292, 163 P 477, 479, Ann Cas 1917 E 783, the respondent was charged with attempting to induce, entice, procure and compel a female person to reside with one Kandelhofer for

immoral purposes, contrary to a section of the Montana act. The evidence disclosed that Kandelhofer's place was in Wyoming and that the respondent's plan was frustrated by the girl and the police after the interstate journey had commenced. It was held that the offense was wholly intrastate and without the purview of the Mann Act, the court saying: "In any event it (the Mann Act) could not prevent the state from punishing an infraction of its own laws, complete without regard to such transportation, and wholly within its own boundaries."

In *State* v. *Wood,* supra, it was held that a Louisiana statute penalizing the enticement, abduction, inducement, etc. of a chaste woman from her father's house or any other place where she may be, for the purpose of prostitution, etc. was not in conflict with the federal law, the court saying that it was immaterial that having been so enticed from her home in this state to a place in another state further representations were there made followed by her prostitution.

A state statute which provided that "any person who shall knowingly transport or cause to be transported, or aid or assist in obtaining transportation for, by any means of conveyance into, through or across this State, any female person for the purpose of prostitution, or with the intent and purpose to induce, entice or compel such female person to become a prostitute, shall be deemed guilty of a felony," was held not to be in conflict with the federal act in *Sisemore* v. *State,* 135 Ark 179, 204 SW 626. This decision is based on what may be thought to be a rather strained interpretation of what is said in *Hoke* v. *United States,* 227 US 308, 33 S Ct 281, 57 L ed 523, 43 LRANS 906, Ann Cas 1913 E 905, regarding the extent of the police power of the states.

In *Hewitt* v. *State,* 74 Tex. Crim. Rep. 46, 167 SW 40, the challenged state statute provided that if any person shall procure or attempt to procure, or be concerned in procuring, with or without her consent, a female to leave this state for the purpose of prostitution, he shall be deemed guilty of a felony. It was held that this statute was not in conflict with the federal act since it does not seek to make criminal the transportation of a person from one state to another, nor in any manner seek to control transportation, but it only seeks to prohibit certain acts being done wholly within this state. The similarity of the Texas statute to our own is noticeable. Procuring a person to leave the state for an illegal

purpose is the same offense as inducing, enticing or procuring the person to go from the state for such a purpose, and we deem the reasoning of the Hewitt case applicable to the case under consideration.

The complaint to which the petitioner pleaded guilty does not indicate the means by which the girl may have gone from the state. The questioned clause of our statute does not make criminal the transportation of a person from this state nor in any manner seek to control transportation, but only seeks to prohibit certain acts being done wholly within this state. We hold that the first clause of P. L. 8618 is not in conflict with the federal law and that that clause, together with the penalty imposed by the final clause of that section, are not unconstitutional. We make no holding as to the constitutionality of other parts of P. L. 8618.

*Judgment that the petitioner is not illegally deprived of his liberty and he is remanded to the states prison at Windsor, whence he was taken, and his petition is dismissed.*