SPRINGFIELD COOPERATIVE FREEZE LOCKER PLANT, INC. *v.* E. R. WIGGINS ET ALS.

(63 A2d 182)

October Term, 1948.

Present: MOULTON, C. J., BUTTLES, JEFFORDS and CLEARY, JJ. and CHASE, Supr. J.

Opinion filed January 5, 1949.

446

*Parker & Ainsworth* for defendants Wiggins and Hemenway Electric Shop.

*Christopher A. Webber* for defendant Peerless Casualty Co.

*Lawrence & O'Brien* for the plaintiff.

CLEARY, J.    This is a Bill in Equity brought by the Springfield Cooperative Freeze Locker Plant, Inc., for the claimed failure of Karl F. Jackson to perform his contract to build the Freeze Locker Plant.    Defendant Peerless Casualty Co. was the surety on Jackson's bond and agreed to indemnify the Locker Co. "against any and all loss or damage directly arising by reason of the failure of the principal to faithfully perform said contract".    Defendants Hemenway and Wiggins filed mechanics' liens against the property for materials and labor furnished Jackson in the construction and later each brought suit against the Locker Co. to enforce their liens. These suits were enjoined, Hemenway and Wiggins being made defendants in the Locker Co.'s suit in equity.    After hearing and Findings of Fact, Decree was for the Locker Co. and Hemenway and against the Surety Co. and Wiggins.

The Surety Co. excepted to the Decree and argues that the Decree is not supported by the Findings because suit was not brought within the time limited in the Bond and because the Locker Co. did not give notice of breach of the building contract by Jackson within a reasonable time as required by the Bond.

The Bond provided as follows: "This bond is executed and accepted upon the following express conditions precedent: All suits at law or proceedings in equity to recover on this bond must be instituted within twelve months after completion of said contract, and in any event within twelve months from the date fixed in said contract for its completion."

The contract for which the Bond was given provided for completion of the work on November 15, 1943. The first loss sustained by the Locker Co. by reason of the failure of Jackson to perform his contract occurred after November 21, 1944. The Surety Co. claims that the contract was completed more than twelve months prior to September 28, 1945 when this suit was instituted.

P. L. § 7070 (now V. S. 1947 § 9187) provides "A policy of fire, life, accident, liability or burglary insurance, or indemnity, surety or fidelity contract or bond . . . shall not contain a condition or clause limiting the time of commencement of an action on said policy or contract to a period less than twelve months from the occurrence of the loss, death, accident or default. . . . Any such conditions or clauses shall be null and void."

It is a well recognized rule that a condition in a policy of insurance providing that no recovery shall be had thereon unless suit is brought within a given time is valid unless the time prescribed can be said to be unreasonable, or the limitation is rendered inoperative by statute. The rule is equally well settled, that such provisions are void when they conflict with statutory inhibitions. *Schlitz* v. *Lowell Mutual Fire Insurance Company,* 96 Vt 334, 119 A 516, and cases cited.

The Surety Company argues that the bond was one of surety against the contractor's defaults and as any default had to occur within twelve months of the completion of the contract and in any event within twelve months from the date fixed in the contract for completion, the bond did not limit the bringing of suit to less than twelve months from default and, therefore, it was not in conflict with the statute. But the bond provides that the Surety Company shall indemnify the Locker Co. against any and all loss or damages directly arising by reason of the failure of Jackson to faithfully perform his contract.

In construing a statute every part of the statute must be considered and, if possible, effect must be given to every word, clause and sentence. *Matter of George Paquette,* 112 Vt 441, 446,

27 A2d 129; *In re Cornell,* 111 Vt 454, 459, 18 A2d 151; *Jacobs* v. *Holden Leonard Co.,* 110 Vt 245, 250, 4 A2d 343.

Since the bond limited the bringing of suit to within twelve months from the date fixed in the contract for its completion and since the Locker Company's first loss occurred more than twelve months after that date the bond violated P. L. § 7070 (now V. S. (1947) § 9187) and so that provision of the bond was null and void.

The Bond further provided as follows: "That the obligee shall notify the Surety by registered letter, addressed and mailed to it at its Home Office, of any breach of said contract within a reasonable time after such breach shall have come to the knowledge of the obligee, or the Architect, or Engineer."

In paragraph 65 of the Findings of Fact the Chancellor stated the Locker Company had not established or shown by any evidence that it notified the Surety Company of any breach of the contract by Jackson within a reasonable time. Later the Chancellor reopened the case for further evidence, particularly in regard to paragraph 65 of the findings of fact, made further findings in substitution and in place of paragraph 65 and struck paragraph 65 from the findings. In the substituted findings the Chancellor did not state that the Locker Company notified the Surety Company of any breach of the contract by Jackson within a reasonable time. But he did include in the findings two letters, of June 20, 1944 and June 28, 1944 written by the Locker Company, notifying the Surety Company of breaches of the contract by Jackson. He also found that these letters were sent by registered mail and were received at the office of the Surety Company and return receipts were returned to the Locker Company. The roof was put on the building in December 1943. The first leaks occurred in March or April 1944 and the letters of June 20, 1944 and June 28, 1944 mentioned the leaks in the roof.

From the record before us and from the facts found it is fairly inferable that the notice was given within a reasonable time and we will assume in support of the decree that the inference was drawn by the Chancellor. *Sparrow* v. *Cimonetti,* 115 Vt 292, 58 A2d 875, 882; *Abatiell* v. *Morse,* 115 Vt 254, 56 A2d 464, 467; *Fair Haven* v. *Stannard,* 111 Vt 49, 53, 10 A2d 214; *Spencer* v. *Lyman Falls Power Co.,* 109 Vt 294, 302, 196 A 276.

The Locker Company gave notice only of breaches of Jackson's contract regarding liens and the roof. The Surety Company claims

that the notice could cover only the damage suffered as a result of the breaches set forth in the notice. The damages awarded by the decree included those for repairs to the roof, Hemenway's lien, and also damages for repairs to and replacement of refrigerating machinery and repairs to the walls.

The courts agree with practical unanimity that in the case of a surety company, acting for compensation, the contract will be construed most strongly against the surety, and in favor of the indemnity which the obligee has reasonable ground to expect. *City of Montpelier* v. *National Surety Co.*, 97 Vt 111, 117, 122 A 484, 33 ALR 489; *Town of Windsor* v. *Standard Accident Insurance Co.*, 112 Vt 426, at 428, 26 A2d 83. The effect of the rule is to give such contracts of indemnity a reasonable construction, so as to give effect to the intention of the parties and to carry out, rather than defeat, the purpose for which they were executed. *City of Montpelier* v. *National Surety Co.*, 97 Vt 111, 118, 122 A 484, 33 ALR 489; *Town of Windsor* v. *Standard Accident Insurance Co.*, 112 Vt 426, 429, 26 A2d 83.

The chancellor found that the leaks in the roof caused moisture to permeate the cork insulation under the roof boards, that the cork became wet and full of frost so that the cork had to be removed and new insulation installed. He also found that the repairs to and replacement of the refrigerating machinery were necessary and due to the deterioration and inefficiency of the insulation after such deterioration. So the Bonding Co. cannot complain of lack of notice where the damages allowed resulted, in part, at least, from a breach of contract of which it had notice. The damages with respect to the refrigerating machinery were properly decreed.

The chancellor decreed the Locker Co. $4000 damages for repairs to the side walls of the building. The findings fail to state that these damages were caused at all by the leaks in the roof but, on the contrary, the findings state that the wall damage was caused by the use and improper application of a sealing coat which failed to act as a complete vapor barrier so that the cork insulation in the walls gathered moisture and deteriorated.

The giving of notice by registered mail was made an express condition precedent in the bond. No such notice was ever given of any breach of the building contract regarding the walls.

Where, by the terms of an insurance contract, a specified notice, given by or on behalf of the insured to the insurer, is made a

condition precedent to liability on the part of the latter, the failure to do so will release the insurer from the obligations imposed by the contract. *Houran Admr.* v. *Preferred Accident Ins. Co.,* 109 Vt 258, 272, 195 A 253. The rule in this respect is the same in the case of a surety bond, where, as here, the bond provides for the giving of notice of any breach of the contract covered by the bond within a reasonable time after such breach shall have come to the knowledge of the obligee. *Brown* v. *Maryland Casualty Co.,* 111 Vt 30, 32, 11 A2d 222, 129 ALR 1404.

The failure to give the required notice released the Bonding Co. from its obligation to the extent of the damage to the side walls and that item of damage must be subtracted from the damages awarded in the decree.

The Surety Co. briefs several of its exceptions to the admission and exclusion of evidence, to the failure of the chancellor to find as requested, and to the findings as made. Most of these exceptions concern the side wall insulation and therefore it is unnecessary to consider them because of our holding regarding the damages which the decree awarded for repairs to the walls.

Request numbered 16 was for findings that though the building was completed in January 1944 and leaks developed in the roof within two or three months thereafter, the Locker Co. did nothing to stop the leaks until November 1944, that the work done then did not remedy the leaks and that the Locker Co. did nothing further until May 1945; that much of the damage could have been avoided if the Locker Co. had used reasonable diligence and care in having the leaks promptly repaired; that it was the Locker Co.'s duty to mitigate damages and its failure to do so relieved the Surety Co. from any liability.

We have carefully searched the transcript. It contains a great deal of evidence which would have supported a finding that the Locker Co. was diligent not only in attempting to repair the roof leaks but in attempting to have the building contractor and also the subcontractor who put on the roof repair the leaks. Surely the evidence did not require the chancellor to make the requested finding. Moreover it called for conclusions of law which would have been without force if made. *In re Moody's Estate,* 115 Vt 1, 9, 49 A2d 562; *Perry* v. *Wheeler,* 331 US 814, 67 S Ct 1201, 91 L Ed 1833; *Phillips* v. *Plastridge et al,* 107 Vt 267, 271, 179 A 157, 99 ALR 1074.

Request numbered 17 was for a finding that some of the work done by Mr. Ufford went beyond the original plans for the building, beyond what was necessary, was done primarily to create a more efficient job and the Locker Co. was not entitled to recover for that expense. But Ufford testified everything he did was necessary, that it was made necessary by a leaky roof. The chancellor found the work underneath the roof boards would not have been necessary if the moisture had not permeated there. So the request was inconsistent with the finding made. The finding was supported by the evidence and the request was properly refused. *Nelson* v. *Travelers Ins. Co.,* 113 Vt 86, 99, 30 A2d 75, and cases there cited. What we have said regarding Request numbered 17 also covers the Surety Co.'s exception to paragraph numbered 37 of the chancellor's findings.

Request numbered 27 related to the time suit was brought and that issue has been disposed of supra.

The Surety Co. has briefed its exception to the admission of Exhibits 51 and 52 in evidence. These are bills for repairs on the roof. The exceptions are unavailing because the contents of the exhibits had been fully testified about without objection and they were offered and received simply as originals of Exhibits 22 and 23 which were already in evidence. True, Exhibits 22 and 23 were received subject to the Surety Co.'s exceptions but these exceptions are not briefed and therefore are waived. *In re Everett's Will,* 105 Vt 291, 306, 166 A 827; *In re Squires,* 114 Vt 285, 286, 44 A2d 133, 161 ALR 349.

The Surety Co. excepted to the Chancellor's failure to comply with two of its requests to find regarding defendant Hemenway's claim. These were that the work done by Hemenway in May 1944 was not done at the request of Jackson or with his knowledge and that Hemenway did not bring his suit to enforce his lien within three months from the time payment was due on his bill rendered Jackson as required by the statute law regarding liens. Both requests were properly denied.

Hemenway's May 1944 work was done after the architect had called his attention to something that had not been completed in connection with the work Hemenway had agreed to do for the contract price. The architect had that authority under the building contract. Payment was not due until Hemenway completed that work and he brought suit within the time required by the statute.

That also disposes of the first exception to the decree allowing Hemenway's claim and ordering it paid.

The Surety Co. excepted to the decree for Hemenway because there was no finding that notice was given to the Locker Co. by Hemenway that he would claim a lien prior to the time the memorandum was filed in the town clerk's office and because there was no finding that it was given on any specified date.

The Surety Co. argues in support of this exception that it was essential that there be a finding as to when notice was given for two reasons: first, notice had to be given prior to the filing of the memorandum in order to comply with the statute and second, that even if this were not the case as a general proposition of law, it is so in this·case since the memorandum was not filed within thirty days from the date payment became due for the last of the labor performed and material furnished. Neither reason is sound.

P. L. § 2685 was amended by § 1 of No. 55 of the Acts of 1935. Paragraphs I, II, and III thereof, so far as here material, read as follows:

"I. When a contract or agreement is made, whether in writing or not, for erecting, repairing, moving or altering a building . . . attached to the real estate, or for furnishing labor or material therefor, the person proceeding in pursuance of such contract or agreement shall have a lien to secure the payment of the same upon such building . . . and the lot of land on which the same stands.

"II. And a person who performs labor or furnishes materials to the amount of fifteen dollars or more for erecting, repairing, moving or altering such building . . . by virtue of a contract or agreement, whether in writing or not, with an agent, contractor or subcontractor of the owner thereof, shall, by giving notice in writing to said owner or his agent having charge of such property that he shall claim a lien for labor or material, have a lien to secure the payment of the same upon such building . . . and the lot of land upon which the same stands, to the extent of the portions of the contract price remaining unpaid at the time said notice is received.

"III. A lien herein provided for ·shall not con-

tinue in force for more than thirty days from the time when payment became due for the last of such labor performed or materials furnished unless a notice of such lien is filed in the office of the town clerk as hereinafter provided."

█ █ It is our duty to harmonize different sections of this act if it can be done reasonably. *King* v. *Hoadley,* 112 Vt 394, 396, 26 A2d 103. Paragraph III relates to the liens provided for in both Paragraphs I and II. With that in mind the words "continue in force" in Paragraph III must be construed to refer to the words which follow "for more than thirty days" etc. rather than to refer to the time when notice had to be given to the owner of the property. Compliance with the statute did not require a finding that notice was given to the owner prior to the time it was filed in the town clerk's office.

Hemenway's last work was performed on May 12, 1944. His lien was filed in the town clerk's office on March 21, 1944. So the statute was satisfied in both respects briefed by the Surety Co. and the exception is of no avail.

█ The Surety Co.'s third and last exception to the decree for Hemenway is that on the date the memorandum was filed there was nothing due the contractor, Jackson, because at that time he had assigned all monies due him from the Locker Co. to the Surety Co. That exception is without merit. The lien created by our statute is a direct lien and therefore the assignment cannot affect the lien. 36 Am Jur 119. If this were not so, a contractor could defeat the lien of a subcontractor by merely transferring the fund due or to become due by giving an assignment and the statute creating a lien in favor of subcontractors or mechanics would become a nullity, as the fund might be transferred immediately upon making the contract to erect the building. *Haynes & Lyons* v. *Coles County et al,* 234 Ill 137, 84 NE 747. So that exception is of no avail. This disposes of all exceptions briefed and argued by the Surety Co.

Defendant Wiggins excepts to the decree adjudging that he had no lien. Wiggins' bill is for materials furnished Jackson by him. Bills were to be made on the first of the month, subject to a 10% discount if paid by the 10th of the month or net at the end of thirty days. Any materials which were left in the construction were to be returned for credit at the completion of the job. The last material

was furnished by Wiggins on December 27, 1943. On that date eight bags of cement were returned and Jackson credited for the return, and a bill was sent Jackson around January 1, 1944.

On March 21, 1944 Wiggins filed his lien in the town clerk's office. In May 1944 Wiggins' agent heard that the job had been completed and told Wiggins. Wiggins also learned from one of Hemenway's men that they were finishing the job at the Locker Plant and Hemenway told Wiggins that he considered his job done.

After receiving this information Wiggins went to the plant, looked around, found twenty bricks Jackson had procured from him, picked them up, put them in his car and transported them back to his place of business. On that date Jackson was credited with $.54 for twenty light hard brick. The chancellor found that in going to the Locker Plant and picking up the twenty bricks Wiggins acted without the knowledge or request of Jackson or ·any of Jackson's agents or employees. After the twenty bricks were brought back by Wiggins on May 31, 1944 a final bill was submitted including that item of credit. Wiggins brought suit on June 17, 1944.

Wiggins had no lien because he failed to file notice in the town clerk's office within thirty days from the time when payment became due for the last of the materials furnished. Moreover, he could not create one by filing notice in the town clerk's office more than thirty days from the time when payment became due for the last of the materials furnished and keep that lien alive by giving Jackson credit for material which was not returned by Jackson at the completion of the job but was found and repossessed by Wiggins without the knowledge or request of Jackson or any of Jackson's agents or employees. See *Miller Lumber Co.* v. *Federal Home Development Co.,* 231 Wis 509, 286 NW 58, 122 ALR 752, and note at 122 ALR 755. So the decree regarding the Hemenway and Wiggins claims is affirmed. But the decree for the Locker Co. must be reversed to the extent that it includes the claim of $4000 for damage to the side walls of the building.

*Decree reversed. Claim of Springfield Cooperative Freeze Locker Plant, Inc. reduced in the amount of $4000. Cause remanded. Let a new decree be entered in accordance with the views expressed in the foregoing opinion.*