## J. R. Hewitt v. The State.

No. 3116.. Decided May 6, 1914.

Rehearing denied May 20, 1914.

**1.—Pandering—Definition—Charge of Court.**

Where, upon trial of pandering, the court's definition of the offense and application of the law to the facts met the requirements of the opinion of the court as laid down in a former appeal, there was no error on that ground.

**2.—Same—Indictment—Gravamen of the Offense.**

The gravamen of the offense of pandering is the procuring of the female to leave this State for the purpose of prostitution, and it is not necessary that the indictment allege into what other State the defendant induced the female to go.

**3.—Same—Indictment—Different Counts.**

Where the defendant objected to the reading by the district attorney of all the counts in the indictment, it appeared from the record that the court only submitted to the jury the count upon which defendant was convicted and withdrew all the other counts from the jury, a general verdict could only be applied to the count submitted.

**4.—Same—Evidence—Ingredient of the Offense.**

Where, upon trial of pandering, defendant was charged with procuring the female to go outside of the State for purposes of prostitution, there was no error in admitting testimony that defendant had carried the alleged female to Shreveport, Louisiana.

**5.—Same—Evidence—Motive.**

Where, upon trial of pandering, the defendant contended that he did not carry away the female from her home, but that she had forced herself on him and he was endeavoring to get her to return to her home, and the State was attempting to show that he had debauched her before she left her home and kept her in hiding, there was no error in admitting testimony of the girl's father that defendant obtained money from him for the purpose of looking for and trying to find his daughter; besides, other witnesses had testified to the same facts without objection.

**6.—Same—Accomplice—Charge of Court.**

The fact that the enticed female in a case of pandering voluntarily went out of the State for the purpose of prostitution would not make her an accomplice, and there was no error in the court's failure to charge on the law of accomplice.

**7.—Same—Requested Charge.**

Where the requested charge is covered by the court's main charge, there was no error.

**8.—Same—Evidence—Bills of Exception.**

In the absence of a bill of exceptions, the rejection or admission of testimony can not be reviewed on appeal.

**9.—Same—Sufficiency of the Evidence.**

Where, upon trial of pandering, the evidence sustained the conviction under a proper charge of the court, there was no error.

**10.—Same—Interstate Commerce Clause—Constitutional Law.**

The law of this State defining the offense of pandering to be a felony is not in violation of or contrary to the interstate commerce clause under the Constitution of the United States, as the law only affects acts done wholly

within this State, and this although defendant may also be amenable under the . Federal law.

Appeal from the District Court of Knox.    Tried below before the Hon. Jo. A. P. Dickson.

Appeal from a conviction of pandering; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Cunningham & Sewell,* for appellant.—On question of insufficiency of indictment:  Hewitt v. State, 71 Texas Crim. Rep., 243, 158 S. W. Rep., 1120; Martin v. State, 19 S. W. Rep., 434; Moseley v. State, 18 Texas Crim. App., 331; Parks v. State, 79 S. W. Rep., 301; Elliott v. State, 49 Texas Crim. Rep., 435, 93 S. W. Rep., 742.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of pandering, and his punishment assessed at twenty-five years confinement in the penitentiary.

This is the second appeal in this case, the opinion on the former appeal being reported in 71 Texas Crim. Rep., 243, 158 S. W. Rep., 1120. On the former appeal this case was reversed because the court did not define prostitution, and did not instruct the jury that the mere fact that the parties had lived together in adultery would not authorize a conviction under this statute.  The court in his charge on this last trial instructed the jury:  "You are charged before you can convict the defendant as charged in the indictment in this cause you must find and believe from the evidence that the defendant took Alma Johnson out of the State of Texas and into the State of Louisiana for the purpose of prostitution, and in this connection you are charged that it is not sufficient that the defendant copulated with and had sexual intercourse with the said Alma Johnson, if he did so; but before you would be authorized in convicting the defendant you must find and believe from the evidence that the defendant took the said Alma Johnson out of the State of Texas and into the State of Louisiana for the purpose of inducing her to engage in sexual intercourse with other men or to enter a house of ill-fame.  And if you have a reasonable doubt whether or not such was the purpose and intent of the defendant in taking the said Alma Johnson out of the State of Texas into the State of Louisiana, if he did so, then you will give the defendant the benefit of such doubt and acquit him."  Consequently, the charge of the court met the requirements of the opinion on the former appeal, and is not subject to those criticisms.

It is insisted that the ninth count should have been quashed on appellant's motion, this being the count under which he was convicted. This same motion was made on the former appeal, but the court declined to quash the indictment, merely suggesting that on another trial it might be well that it be made more specific.  The complaint now made is that it is defective because the indictment does not allege into which State

appellant induced Alma Johnson to go, the indictment merely alleging that "he procured her to leave this State for the purpose of prostitution." We do not think it material into which State he induced her to go—the gravamen of the offense is procuring her to leave this State for the purpose named. They might not when they leave have specific destination in any foreign State, but if one induces a female to leave the State for such purposes, although no specific destination was named or agreed on, and they were going in search of a suitable location beyond the confines of the State, still the offense would be completed, even before they finally agree on a destination, when she has been induced to leave the State. Chapter 23, Acts of Thirty-second Legislature, provides that if any person shall procure or attempt to procure, or be concerned in procuring, with or without her consent, a female to leave this State for the purposes of prostitution, he shall be deemed guilty of a felony, and the ninth count in the indictment is in full compliance with this provision of that Act.

The indictment contains nine counts charging pandering in almost all the ways denounced by the statute. Appellant complains that the court erred in permitting the district attorney to read all the nine counts to the jury, as the court on the former trial had submitted only the ninth count, appellant contending that this was equivalent to an acquittal on those counts not submitted by the court to the jury. As they were not submitted to the jury for a finding on the former trial, of course it would not amount to an acquittal, but as appellant had entered a plea of not guilty to all the counts on the former trial, if eight of them were withdrawn from the jury thereafter without his consent this would be former jeopardy as to those counts not submitted to the jury on the former trial. However, on this trial the court only submitted to the jury the ninth count, which appellant admits in his oral motion was the count under which he was convicted on the former trial, and the court instructed the jury that the other counts, Nos. 1, 2, 3, 4, 5, 6, 7 and 8, were withdrawn from their consideration, and they could not be considered for any purpose; this presents no reversible error.

Appellant also complains that the court erred in defining "pandering" in his charge, he defining it as it is defined in the statute, that he ought to have narrowed his definition to the only mode submitted by him to the jury for a finding—the mode charged in the ninth count in the indictment.

As the court in the charge instructed the jury, "Counts Nos. 1, 2, 3, 4, 5, 6, 7 and 8 in the indictment are withdrawn from your consideration, and you will not consider same for any purpose," and then in submitting the issue to the jury, submitted to it only the mode and method of pandering charged in the ninth count in the indictment, and under such circumstances a general verdict of guilty would and could only be applied to the ninth count in the indictment, as the jury has been specifically instructed that no other count was submitted to them for a finding.

There was no error in permitting the prosecuting witness to testify,

and the defendant on cross-examination to be asked, if he had not carried Alma Johnson to Shreveport, Louisiana. This would show that he had procured her to go "without the State," and was germane to the issues involved in the case. It was not only necessary to prove that he had procured her to go without the State, but also that he procured her to do so for the purposes of prostitution, and it was as essential to prove one ingredient of the offense as the other.

The only other bill of exceptions in the record complains that the court erred in permitting S. P. Johnson, the father of the prosecuting witness, to testify that appellant obtained from him the sum of twenty-five dollars for the purpose of paying appellant's expenses in looking for and trying to locate Alma Johnson, the contention being that said testimony was irrelevant, immaterial and prejudicial to the rights of defendant, and tended to show the commission of another offense, towit: swindling. The fact that this would tend to prove an extraneous crime would be immaterial, if it was res gestae of the transaction, or tended to connect the defendant with the offense charged, tended to show the intent of appellant in carrying the girl away from her home. Gilbraith v. State, 41 Texas, 567; Lacey v. State, 22 Texas Crim. App., 657; Davison v. State, 12 Texas Crim. App., 214; Lynne v. State, 53 Texas Crim. Rep., 375; Stanfield v. State, 43 Texas Crim. Rep., 10; Fielder v. State, 40 Texas Crim. Rep., 184. Appellant by his evidence was contending that he had not carried the girl away from her home in Knox County, and that she had forced herself on him, and he was endeavoring to get her to return to her home, while the State's evidence tended to show that he had debauched her before she left Knox County, and had carried her away, and was at the time he got this money keeping her in Dallas under an assumed name. Evidence that he claimed he did not know where she was; that he would look for her, if her father desired, as he could do it cheaper than the father, he being a minister of the gospel and able to travel on a half fare ticket, would all have a tendency and a strong tendency to show whether appellant had procured the girl to leave home as charged, or she had forced herself on him as contended by appellant. It was admissible not only as a part of the transactions occurring in the scheme, as charged by the State, to procure this girl to leave her home and go with appellant out of the State. Again the girl testified that when appellant came back from a trip to Knox County he told her about getting this money, claiming that he had blindfolded the people of Bomarton and Goree, and he had got this money from her father to hunt her up when he had her there in Dallas; that he had taken her father into a little back room of the bank and related to him everything he could think of about how he, appellant, had been hunting for her. All this testimony of Miss Alma Johnson had been admitted without objection before S. P. Johnson had been offered as a witness, and having gone before the jury without objection, and appellant also testifying that he had procured this money from Mr. Johnson, while pretending to hunt

for his daughter, without objection, the admission of Mrs. Johnson's testimony would present no error, as the testimony was already before the jury unobjected to, and no motion made to strike it out.

Appellant presented a special charge requesting the court to charge that if Alma Johnson voluntarily went out of the State for the purposes of prostitution, that she would be an accomplice. This is not the law, as has been frequently decided by this court under the peculiar provisions of the Code creating and denouncing this offense.

The only other special charge requested, as shown by the record, was fully embraced with the terms of the court's charge as read to the jury.

There are a number of other complaints in the motion as to admissibility of testimony, but as no bills of exception are contained in the record, showing that any objection was made during the trial to the admissibility of such testimony, those grounds are not verified in a way we can review them.

The only other ground in the motion complains of the insufficiency of the testimony to show that appellant procured the girl, Alma Johnson, to leave Knox County and go with him to Louisiana, and there engage in prostitution. After a careful review of the testimony we have come to the conclusion that under the testimony in this case the jury would be authorized to find that this was the object and purpose of appellant from the time of his first move until he abandoned the girl at Shreveport, Louisiana. She was a member of the Baptist congregation at Bomarton in Knox County. He was pastor of his church. He was guilty of adulterous intercourse with this girl in his home and in her home, as is shown by all the testimony. She testified that during this time appellant often talked to her about New Orleans, Louisiana. That he formerly lived there, and would describe what a great place it was; "that you could earn money there and be as lazy as you wanted to." After having the adulterous relations with her in Knox County, she says she thought she was in a family way, and defendant induced her to go away with him; that she begged him to wait five or six days longer so she could determine whether or not she was pregnant, but he would not wait, and insisted on going at once. That fearing she was pregnant, she went with him, and he first carried her to Dallas, and to other points, living all the time under an assumed name, finally going to Shreveport, Louisiana. That at times appellant would tell her that she looked and acted like a prostitute, and would tell her about prostitutes wearing silks and diamonds. She testified, "During the time we were in Louisiana and elsewhere, he would very often say about me and about my clothes, that I looked and acted very much like a common prostitute, then again he would say something about the prostitutes how they would live and wear silks and diamonds; he would also relate to me everything that went on in a house of that kind, also he said he had been with those houses so much that he did not realize hardly what a house of ill-fame was. He did not come straight out and ask me how I would like to live

that kind of a life, but he would often ask me if I would not like to be earning money, and wear silks and diamonds, then was when he would call me baby and pet names like that; and I would tell him 'no' I would not do such a thing; then at times he would again talk and tell what horrible places they were, and of things he had seen in them, and of what he had done; then I would ask him to stop. I would tell him with tears to respect me. And he did detail to me the manner of carrying on business in these houses. As far as clothes are concerned, of course he knew that I liked to look neat, but I did not care for fine clothes, he would often call me by some endearing name and say, 'Why, my good-ness, Alma, you could be wearing diamonds, you could be wearing satins of all colors, and be making an easy living.' I was to make that money by the house of ill-fame. Later he related to me how he could get us a nice little room, then I could have male company, and thereby earn money; and of course he would take part of the money, that was part of the plans, but I refused to do that."

After a careful review of the entire record we find no reversible error, and the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### May 20, 1914.

HARPER, JUDGE.—Appellant has filed a motion for rehearing in which he raises but one question, and that one was not presented to the court below, nor to this court on the original hearing. He now insists that that portion of the pandering statute which provides that "any person who shall procure or attempt to procure or be concerned in procur-ing, with or without her consent, a female to leave this State for the purpose of prostitution, shall be deemed guilty of a felony," is in violation of and contrary to that clause of the Federal Constitution which pro-vides: "The Congress shall have power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." He cites us to the cases of Montana v. State, 138 Pac., 495; Morgan Steam-ship Co. v. Louisiana, etc., 118 U. S., 455; Pierce v. New Hampshire, 5 How., 597, and Cyc., vol. 7, pp. 421-422. The last three citations have no further reference to legislation of this character than to hold that Congress has exclusive control over the regulation of interstate commerce, while the first case cited is a decision of the Supreme Court of Montana on a statute relating to the same question as does the statute involved in this case. The Montana statute prohibited the *transportation* of women from another State into that State for immoral purposes, and to punish those who aid women in obtaining such transportation. Our statute does not do this, but is aimed alone at acts done wholly within this State. The Supreme Court, in discussing the validity of the Mann White Slave Act, and sustaining its constitutionality in the case of Hoke v. United States, 227 U. S., 308, rests its decision on the ground

that as the transportation of persons between the States is interstate commerce, Congress may regulate such transportation. The purpose of such transportation is but an incident thereto. And in that case Justice Kenna, who rendered the opinion, says: "We may illustrate again by the Pure Food and Drug Act. Let an article be adulterated, let it be misrepresented by false branding, and Congress may exercise its prohibitive power. It may be that Congress could not prohibit the manufacture of the article in a State. It may be that Congress could not prohibit in all its conditions its sale within a State. But Congress may prohibit its transportation between the States, and by that means defeat the motive and evils of its manufacture." Thus clearly recognizing the right of the State to control in regard to all acts done wholly within the State. Our statute does not seek to make criminal the transportation of a person from one State to another, nor in any manner seek to control transportation, but it only seeks to prohibit certain acts being done wholly within this State. A person might attempt to procure a woman to leave this State for the purposes denounced, and she refuse. Certainly, Congress could not punish that act, while the State law may and does. If in addition to the acts done by appellant in Knox County, he, in addition thereto, provided her transportation, or aided her in any way to go from this State to Louisiana, he violated the Mann Act as well as as our statute, and might be prosecuted therefor as a separate and distinct crime, but appellant in his testimony seems to be guarding against this by testifying he furnished no transportation, and did not aid her to secure it. This statute is of the same nature and character as article 1431, which punishes one for bringing stolen property into this State, the constitutionality of which Act has never been questioned so far as we have been able to ascertain. In that instance we do not punish him for the original theft, but the bringing of stolen articles into this State is defined to be an offense. The Federal statute prohibits the transportation of lottery tickets, but this does not render invalid the law of this State prohibiting the sale of lottery tickets within its borders. So in this case we are not seeking to punish a man for an act done in a foreign State, nor for the transportation of any person from this State to another State, but have defined as an offense acts done wholly within this State.

The motion for rehearing is overruled.

*Overruled.*