Ex Parte ANDERSON.
No. 9148.
Submitted November 9, 1950. Decided November 30, 1950.
238 Pac. (2d) 910.

Mr. Seth F. Bohart, Bozeman, for petitioner.

Mr. Michael J. O'Connell, County Atty., Bozeman, for respondent.

Mr. Bohart and Mr. O'Connell argued orally.

MR. CHIEF JUSTICE ADAIR:

Original proceeding in habeas corpus.

By information filed in the district court of Gallatin county, Montana, the petitioner James Q. Anderson was accused with having committed the crime of felony in the exportation of a named girl for immoral purposes in that he, in said Gallatin county, did feloniously induce and entice her to go from the state of Montana for the purpose of living in concubinage with him contrary to the form, force and effect of the statute in such case, made and provided and against the peace and dignity of the state of Monatna.

The petitioner was taken into custody in the state of Nevada and brought from there to the state of Montana where he was placed in the Gallatin county jail at Bozeman wherein he has since been held as a prisoner to await trial on the aforesaid charges.

The petitioner demurred to the information upon various grounds some of which challenge the jurisdiction of the state district court. Upon the overruling of his demurrer the petitioner applied to this court for a writ of habeas corpus seeking release from his confinement. The writ issued and on the return day the sheriff of Gallatin county appeared before this court

with his prisoner, the petitioner, and the cause was heard by the court upon the prisoner's petition and the state's objections thereto.

In his petition the petitioner recites that he is an Indian ward of the Federal Government duly enrolled upon the tribal rolls of the Klamath tribe of Indians in the state of Oregon and, upon the filing of the petition, it was orally represented to this court that subsequent to the date charged in the information and prior to the filing thereof the petitioner and the girl whom he is charged to have exported and to have induced to go from Montana for the purpose of living with him in concubinage had intermarried in the state of Nevada.

The Constitution of the United States grants to Congress the power to regulate commerce with foreign nations and among the several states and with the Indian tribes. U. S. Const. art. I, sec. 8.

In 1910, pursuant to the Constitutional authority so granted it, the Congress of the United States enacted the Federal White Slave Traffic Act, also commonly referred to as the Mann Act, 36 Stat. 825, 18 U. S. C. A. secs. 2421-2424, which Act makes the transportation of women or girls in interstate commerce in going to any place for the purpose of prostitution or debauchery or for any immoral purpose or the obtaining, aiding or inducing of such transportation, a federal offense and prescribes as the penalty therefor fine or imprisonment of not more than five years or both.

Some seven months after the Congress had entered the foregoing field of legislation by the enactment of the Mann Act, supra, the Twelfth Legislative Assembly of the state of Montana passed Chapter 1 of the Session Laws of 1911, which, on January 28, 1911, received the approval of the governor. The state Act contains twelve separately numbered sections. Sections numbered 1 to 9, both inclusive, assume to prohibit and make criminal certain enumerated acts and conduct and to separately prescribe in each section the separate penalty provided therefor,

each section being a complete law unto itself wherein the offense is designated and the penalty attaching to its violation prescribed.

Section 1 of Chapter 1, Laws of 1911, assumes to prohibit "The importation of women and girls into this state or the exportation of women and girls from this state for immoral purposes" and to punish as a felony those who violate its provisions including those who "shall induce, entice, or procure, or attempt to induce, entice, or procure, to come in this state, or to go from this state, any woman or girl for the purpose of prostitution or concubinage, or for any other immoral purpose" and prescribing as a penalty a fine or imprisonment for a period of not less than two years nor more than twenty years or by both fine and imprisonment.

The instant proceeding is in no wise or manner concerned with the validity of the provisions of any section of Chapter 1, Laws of 1911, other than those of section 1 which section was reenacted as section 11008 of the Revised Codes of 1921 and 1935 and as section 94-4109 of the Revised Codes of 1947 being the specific statute under which the information against the petitioner was drawn.

The provisions of section 1 of Chapter 1, Laws of 1911, were first considered by this court in State v. Harper, 1914, 48 Mont. 456, 138 Pac. 495, 51 L. R. A., N. S., 157, 159, Ann. Cas. 1915D, 1017, wherein this court held that since the Congress has exclusive jurisdiction to regulate interstate commerce and since the transportation of passengers from one state to another is interstate commerce and since, by the Mann Act, the Congress has assumed to regulate the transportation of females from one state to another for immoral purposes, the state legislature had no power to enact a provision covering the same subject matter, and that therefore section 1 of Chapter 1, Laws of 1911, is inoperative and held that the district court of Park county properly sustained a demurrer to an information charging the defendant with a violation of section 1 of such act. There, as here, counsel for the state insisted that both the federal Act and the state Act remain in effect; that the jurisdiction over

the offense named is concurrent in the federal and the state courts and that since the United States and the state are different sovereignties, the same Act may be an offense against both. In rejecting such contentions in the Harper case, supra [48 Mont. 456, 138 Pac. 498], this court said: "This might be true in some instances, but here we are confronted with the fact that, so far as the regulation of interstate commerce is concerned, the states have expressly surrendered the entire subject to the general government, and that, when the general government sees fit to exercise the powers delegated and surrendered to it by the states, the state is precluded from saying that the subject, or any matter connected therewith, is under the concurrent control of the two sovereignties."

Here the legislature of the state of Montana remained silent on the subject of the importation of women and girls into this state or the exportation of women and girls from this state for immoral purposes until after the Congress had exerted its constitutional authority and passed the Mann Act, supra.

The Constitution of the United States provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U. S. Const. art. VI.

In 11 Am. Jur., Conflict of Laws, pp. 306-308, section 8, it is said: "The authority. of the United States Government is supreme in its cognizance of all subjects which the Constitution has committed to it. * * * A state law which contravenes a valid law of the United States is void. * * * The states * * * cannot invade a field which belongs exclusively to Congress. Likewise, where Congress has legislated upon a subject which is within its constitutional control and over which it has the right to assume exclusive jurisdiction and has manifested its intention to deal therewith in full, the authority of the states is necessarily excluded, and any state legislation on the subject is void. Moreover, the state has no right to interfere or, by way of complement

to the legislation of Congress, to prescribe additional regulations and what they deem auxiliary provisions for the same purpose.''

The rule here applicable is that stated in 15 C. J. S., Commerce, sec. 126, page 490, viz.: ''Congress has the power to make the transportation of women for immoral purposes in interstate commerce an offense. After congress has acted the states are without power to enact statutes covering the same subject matter.'' This rule was applied in the Harper case, supra, and it governs the case at bar.

Thus is the power of Congress to regulate interstate commerce and all its instrumentalities supreme. U. S. Const. art. VI. That power so far as it concerns the importation and exportation of women and girls for immoral purposes was exerted by the Congress in 1910 so that when the 1911 state legislative assembly thereafter assumed to enact section 1 of Chapter 1 of the Laws of 1911 on the identical subject and to prescribe a maximum imprisonment penalty four times greater than is provided in the Federal Act this state was then wholly without jurisdiction. Section 1 of Chapter 1, Laws of 1911 (now R. C. M. 1947, sec. 94-4109) being in contravention of a valid law of the United States, is wholly void. See 11 Am. Jur., Conflict of Laws, pages 307-308, sec. 8, notes 12 and 19; Prigg v. Pennsylvania, 16 Pet. 539, 617, 618, 41 U. S. 539, 617, 618, 10 L. Ed. 1060, 1089, 1090; Mondou v. New York, N. H. & H. R. Co. (Second Employers' Liability Cases), 223 U. S. 1, 55, 32 S. Ct. 169, 56 L. Ed. 327, 348, 38 L. R. A., N. S., 44; Erie R. R. Co. v. New York, 233 U. S. 671, 683, 34 S. Ct. 756, 58 L. Ed. 1149, 1154, 52 L. R. A., N. S., 266; Ann. Cas. 1915D, 138; Southern Ry. Co. v. Railroad Commission, 236 U. S. 439, 35 S. Ct. 304, 59 L. Ed. 661; Charleston & W. C. R. Co. v. Varnville Furniture Co., 237 U. S. 597, 604, 35 S. Ct. 715, 59 L. Ed. 1137, 1140, Ann. Cas. 1916D, 333; Missouri Pac. R. Co. v. Porter, 273 U. S. 341, 346, 47 S. Ct. 383, 71 L. Ed. 672, 675.

''An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal

cause of imprisonment." Ex parte Siebold, 100 U. S. 371, 376, 25 L. Ed. 717.

The statute under which the information was drawn being ▮ void, the information is wholly insufficient, fails to state a public offense and petitioner's demurrer thereto should have been allowed. Consequently the petitioner, being held in custody as a prisoner on a warrant predicated on such information, is unlawfully restrained of his liberty and it is ordered that he be released and discharged from custody forthwith.

ASSOCIATE JUSTICES METCALF, BOTTOMLY, FREE-BOURN and ANGSTMAN, concur.