**James Lester TAYLOR, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–73–103.**

Court of Criminal Appeals of Oklahoma.

Nov. 28, 1973.

Robert A. Jackson, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., William Thiebaut, Jr., Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, James Lester Taylor, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Woodward County, case No. CRF–72–40, for the crime of Pandering in violation of 21 O.S.1971, § 1081. He was sentenced to serve a term of fifteen (15) years in the state penitentiary in accordance with a verdict of the jury and a timely appeal has been perfected to this Court.

At the trial, the State called four witnesses including the two women, Patricia Ann Watkins and Alberta Sue York, whom the defendant was alleged in the Information to have caused, induced, persuaded and encouraged to come into the State of Oklahoma from without the State for the purpose of prostitution.

Miss Watkins testified that she and Miss York had come from Tennessee in the company of the defendant and Miss York's brother, John Burgan. She stated that she had known the defendant for approximately one year in Tennessee and that during the final month of that period, she had voluntarily undergone a "training period" to become a prostitute. The precise "training" she received is not elucidated by the testimony except that she was told "how to check for v. d. and different things people might want." (Tr. 127) In response to the prosecutor's inquiry of who had been her teacher during this training, she responded "The questions—some of the questions and a lot of the answers was told to me by Alberta Sue, and when it came to the sex it was Jim." (Tr. 127) She further testified that prior to leaving Tennessee, she and John Burgan, Alberta Sue and the defendant met at a certain motel in Pigeon Forge and discussed going out West to find a job. Miss Watkins stated that the idea of the party of four traveling west to find jobs originated with the defendant and that the type of job he was to obtain for her was working in a house of prostitution.

The party left Tennessee in two cars with Miss Watkins, according to her testimony, traveling with Alberta Sue for the initial stage of the journey. After driving non-stop to Oklahoma, the four found accommodations at a motel in Henrietta. Leaving the men at that motel, the two women drove to Oklahoma City where, Miss Watkins testified, they engaged in an act of prostitution with two truck drivers in a truck parked on the outskirts of the

city. She stated that this project was undertaken at the direction of the defendant and that he received the total proceeds of the transaction. The women rejoined the two men in Henrietta and the party traveled to Woodward, Oklahoma. In Woodward, they went to a certain hotel where the women waited in the lobby while the defendant talked to the manager.

Alberta Sue York testified that she had married the defendant just prior to their leaving the State of Tennessee. It was her testimony that the party intended only to drive through Oklahoma on their way to California via Colorado. She stated that she had driven to Oklahoma City with Patricia Watkins, but that the purpose of that trip was sight-seeing and shopping. She denied that she had engaged in an act of prostitution while on that side trip to Oklahoma City or any other time in Oklahoma. It was her testimony that her husband and herself were going to California to visit his children and his mother. She testified that Patricia Watkins had told them in Pigeon Forge, Tennessee, that she wanted to go to California with them to find her father who had abandoned her mother because she would like to "spit in his face." (Tr. 165) She stated that when they were in Woodward, her husband told her that he had obtained a job for her working in the bar of the hotel, but that she had not wanted to take that job.

Dee Martin testified that on November 13, 1972, she was the manager of the hotel in Woodward. She stated that on that date the defendant had telephoned her and that following that telephone conversation with him, she called the sheriff, A. C. Gaston. Thereafter, the defendant appeared at the hotel with the two women and inquired of Miss Martin if they could work as prostitutes at the hotel.

The Sheriff, A. C. Gaston, testified that on November 13, 1972, he had received a telephone call from Dee Martin advising him that the defendant, James Taylor, had offered two women for prostitution; that the car that defendant drove had a Tennessee license tag; and that he said that he had just come from Tennessee. As a result of that phone call, he arrested the defendant "for bringing women into the State of Oklahoma" and the two women as material witnesses.

The defendant, testifying in his own behalf, admitted that he had approached Dee Martin to inquire whether the two women might work as prostitutes in the hotel that she managed. He stated that he was traveling through Oklahoma on his way to California to visit his mother and his children, but had gone to Woodward because Patricia Watkins insisted that she needed money and wanted to go to work. He stated that he believed that if anyone would put the girl to work as a prostitute, Dee Martin would. He testified that he was aware that Dee Martin, as manager of the hotel in question, employed prostitutes because she had a widespread reputation as one engaged in the business of offering women for prostitution. In addition, he related a previous experience which had provided him with direct personal knowledge that prostitutes were employed at that hotel.

Title 21 O.S.1971, § 1081, under which the defendant was convicted, makes criminal the act of procuring or inducing a woman to become or remain an inmate of a house of prostitution and the act of procuring a woman to come into or leave the State of Oklahoma. The statute sets forth numerous means and circumstances under which such procurement or inducement is criminal. Three of its provisions relate to procuring a woman to come into or to leave the State. They declare that a person is guilty of the crime of pandering who (1) "shall, by fraud, or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority procure any female person . . . to come into this State or leave this State for the purpose of prostitution," or, (2) "shall procure any female person, who has not previously practiced prostitution . . . to come into this State or to leave this State for the purpose of prostitution," or

(3) "shall receive or give or agree to receive or give any money or thing of value for procuring or attempting to procure any female person . . . to come into this State or leave this State for the purpose of prostitution . . . ."

The charging portion of the Information in the instant case states that the defendant, on November 13, 1972, in Woodward County, committed the crime of Pandering in that:

> "Said defendant, James Lester Taylor, did then and there unlawfully, wilfully, knowingly and feloniously, cause, induce, persuade and encourage Alberta Sue York and Patricia Ann Watkins, two (2) female persons, to come into the State of Oklahoma from without the State of Oklahoma, for the purpose of Prostitution."

At the close of the evidence, the jury was instructed that:

> "The statute under which the defendant is charged insofar as this case has been presented is as follows:
>
> 'Any person who shall by fraud, or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority procure any female person to come into this State for the purpose of prostitution shall be guilty of pandering, and upon conviction shall be punished by imprisonment in the State penitentiary for a period of not less than two years nor more than 20 years, and by a fine of not less than $300.00 and not to exceed $1,000.00.'"

In his brief on appeal, the defendant challenges, inter alia, the sufficiency of the certainty of the Information, a question raised for the first time on appeal, and the sufficiency of the State's evidence to prove the elements of the crime charged.

While this Court has previously construed those provisions of this section relating to houses of prostitution, we have never before had occasion to consider any of the three provisions which relate to procuring a woman to come into or leave this State. For that reason, we believe a brief summary of this area of law as it has developed in other jurisdictions to be of assistance in construing that provision of § 1081 under which the defendant was convicted.

■　Pandering statutes such as § 1081, which contain a provision making it a criminal offense to procure a woman to go from place to place or to enter or leave the state for the purpose of prostitution, are not uncommon among American jurisdictions. See Annot. 74 A.L.R. 311, 330–332 (Constitutionality and construction of pandering acts). It has been pointed out, however, that the significance of such provisions in state statutes has been greatly diminished because of the Federal Legislation popularly known as the White Slave Traffic Act (Mann Act), 18 U.S.C. § 2421 et seq., which prohibits the transportation of women in interstate or foreign commerce for immoral purposes. Wharton's Criminal Law and Procedure, Vol. 2, § 772, page 605 (1957). This is true because, to the extent that such provisions make the actual movement in interstate commerce an element of the crime, the federal act has displaced the state law. Ex parte Anderson, 125 Mont. 331, 238 P.2d 910 (1951). See 15 C.J.S. Commerce § 126, page 850; cf. Hoke v. United States, 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523 (1913).

■　While it is true that certain acts may constitute a crime equally against the state and the United States, such concurrent or parallel jurisdiction does not exist where the state penal statute is in conflict with Federal Legislation enacted under the authority given Congress by the Federal Constitution to regulate commerce with foreign nations and among the several states. That grant of power to Congress is paramount over those legislative powers reserved to the states. Therefore, any legislation of a state, although in pursuance of an acknowledged power reserved to it, which conflicts with the actual exercise of Congress over the subject of commerce,

must give way before the supremacy of the national authority. Smith v. Alabama, 124 U.S. 465, 8 S.Ct. 564, 31 L.Ed. 508.

■ The rule applicable to state pandering acts vis-a-vis the Mann Act is stated in 63 Am.Jur.2d, Prostitution, § 9, page 373, viz:

> "In accordance with the well-settled principle that, in the event of conflict between federal legislation regulating interstate commerce and a state statute, the federal legislation prevails and the state legislation is of no effect insofar as it impinges upon the field of interstate commerce occupied by the federal enactment, state legislation relating to the transportation of females for purposes of immorality is valid only insofar as it does not conflict with federal legislation on the subject." (footnotes omitted)

Also, in 15 C.J.S. Commerce § 126, page 850:

> "Congress has the power to make the transportation of women for immoral purposes in interstate commerce an offense. After Congress has acted the states are without power to enact statutes covering the same subject matter."

The case which has long provided guidance in this area of the law is Hoke v. United States, 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523 (1913), which upheld the constitutionality of the Mann Act against the contention that the right and power to regulate prostitution is solely within the reserved police power of the several states and cannot be diminished or interfered with by the enactment of Federal Legislation under the authority of the commerce clause. Mr. Justice McKenna speaking for a unanimous court stated:

> "The power of Congress under the commerce clause of the Constitution is the ultimate determining question. If the statute be a valid exercise of that power, how it may affect persons or states is not material to be considered. It is the supreme law of the land, and persons and states are subject to it."

In the case of Ex parte Anderson, 125 Mont. 331, 238 P.2d 910 (1951), an original proceeding in habeas corpus, the applicant was charged by Information with having committed the crime of Exporting a Girl from the State of Montana for Immoral Purposes in violation of a Montana statute providing for the punishment by a fine of imprisonment of a period of not less than two (2) nor more than twenty (20) years for those who "shall induce, entice, or procure, or attempt to induce, entice, or procure to come in this state, or to go from this state, any woman or girl for the purpose of prostitution or concubinage, or for any other immoral purpose." The Supreme Court of Montana held that provision wholly void in contravention of the Federal White Slave Traffic Act (Mann Act) and ordered the applicant discharged from custody. See also State v. Harper, 48 Mont. 456, 138 P. 495 (1914).

Other courts, however, have upheld the validity of similar provisions in state laws, insisting that the proper construction of such a law is that it prohibits only acts done solely within the state, so that the offense is complete by reason of the misconduct (that is, the inducement or procurement) engaged in within the borders of the state entirely irrespective of any interstate transportation or movement which is contemplated by the parties or which actually takes place.

Thus, in re Squires, 114 Vt. 285, 44 A.2d 133 (1945), the Supreme Court of Vermont, in a well considered opinion, construed a section of the Vermont Statutes providing for the punishment of a "person who induces, entices or procures a female person to come into the state or to go from the state for the purpose of prostitution or for any immoral purpose." The court in holding that the provision was not void as in conflict with the Federal White Slave Traffic Act because it prohibited only misconduct done within the borders of the State of Vermont, stated:

> "Of course it might be said that a woman is not induced, enticed or procured to

go from the state unless she at least starts to go. Nevertheless the inducing is an act separate and distinct from the going and is preliminary thereto. It is apparent that it must be accomplished before the journey commences. That further representations and inducements might later be made would be immaterial, as was held in State v. Wood (1915) 136 La. 658, 67 So. 542.

\* \* \* \* \* \*

"[O]ur statute does not make criminal the transportation of a person from this state nor in any manner seek to control transportation, but only seeks to prohibit certain acts being done wholly within this state."

Likewise, in Hewitt v. State, 74 Tex.Cr. R. 46, 167 S.W. 40 (1914), the court held that a similar provision of the Texas Pandering Act was not void in contravention of the Federal Act for the reason that:

"Our statute does not seek to make criminal the transportation of a person from one state to another, nor in any manner seek to control transportation, but it only seeks to prohibit certain acts being done wholly within this state. A person might attempt to procure a woman to leave this state for the purposes denounced, and she refuse. Certainly Congress could not punish that act, while the state law may and does. If, in addition to the acts done by appellant in Knox county, he, in addition thereto, provided her transportation, or aided her in any way to go from this state to Louisiana, he violated the Mann Act as well as our statute.

\* \* \* \* \* \*

"The federal statute prohibits the transportation of lottery tickets, but this does not render invalid the law of this state prohibiting the sale of lottery tickets within its borders. So in this case we are not seeking to punish a man for an act done in a foreign state, nor for the transportation of any person from this state to another state, but have defined as an offense acts done wholly within this state."

In the case of State v. Speer, 130 Kan. 226, 285 P. 639 (1930), the statute under which defendant was convicted made punishable as a felony the act of any person "who shall . . . procure . . . any female person . . . to leave this state or to go from one place to another within this state, for the purpose of prostitution, fornication or concubinage . . ." The Supreme Court of Kansas in construing that provision noted it was unnecessary to the offense that immoral conduct actually take place because, "the gist of the offense was that of getting her to go from one place to another for an immoral purpose." 285 P. at 640 (quoting State v. Clark, 125 Kan. 791, 266 P. 37).

An analogous construction by this Court has been placed upon those provisions of § 1081 relating to houses of prostitution. In Abrams v. State, 13 Okl.Cr. 11, 161 P. 331 (1916), this Court said:

"The gist of this offense is not that a woman is in a house of prostitution, but that she has been procured or induced by some of the means named in the statute to enter or remain in a house of prostitution." 161 P. 332.

■ The similarity of the statutes of Vermont, Texas and Kansas construed in the cases of In re Squires, Hewitt v. State, and State v. Speer, supra, to our own statute is notable. We deem the reasoning of those cases in construing similar statutes applicable to the construction of § 1081 insofar as its provisions relate to procuring a woman to come into or to leave the state. We conclude that the offense therein denounced does not consist in the actual transporting into or out of this State of women for the purpose of prostitution but in the act of procuring such women which is separate from and preliminary to the start of any journey which takes place as a result.

 The word "procure" as used in § 1081 has a well established meaning in criminal law:

"In criminal law, and in analogous uses elsewhere, to 'procure' is to initiate a proceeding to cause a thing to be done; to instigate; to contrive, bring about, effect or cause.

\* \* \* \* \* \*

"To 'procure' an act to be done is not synonymous with to 'suffer' it to be done." Black's Law Dictionary, 3rd Ed., p. 1437 (Cites omitted)

Therefore, in the context of the provision under which this defendant was convicted, if it be shown that the accused, while in the State of Oklahoma, communicated with a woman outside the State or in any other way initiated proceedings to cause her to come to this State or to leave it, with the specific intent that she engage in the business of a prostitute at the journey's end, and if it be shown further that she agreed to come or go as the result of fraud or artifice worked upon her, or of duress or the abuse of a position of confidence or authority, then the elements of the crime are complete within the borders of this State, irrespective of any travel between states or of any act of prostitution which may result.

 We are of the opinion that this case may be disposed of upon defendant's contention that the court erred in failing to sustain his demurrer to the evidence of the State. We are compelled to agree for the reason that the evidence of the State, even if deemed otherwise sufficient to sustain the verdict, irrefragably discloses that every material element of the offense charged took place in the State of Tennessee, wholly without the jurisdiction of the courts of this State. Under that evidence we are unable to say as did the Texas court in Hewitt v. State, supra, that "in this case we are not seeking to punish a man for an act done in a foreign state . . ."

In addition, we note parenthetically that there is no evidence that the defendant and his party intended to do other than travel through the State of Oklahoma at the time of their decision to leave Tennessee. Further, it does not appear from the evidence that such decision on the part of the two women to leave Tennessee was the result of fraud or duress perpetuated or exerted by the defendant or was anything other than volitional.

The attention of the prosecutor is directed to those provisions of § 1081 relating to procuring a woman for a house of prostitution; or procuring a place for a woman as an inmate in a house of prostitution; to the opinion of this Court in Hicks v. State, 93 Okl.Cr. 311, 227 P.2d 685, 691 (1951), discussing respectable hotels as houses of prostitution within the meaning of the statute and to Jefferson v. State, 21 Okl.Cr. 388, 208 P. 1038 (1922) holding that the nature of the crime of Pandering under § 1081 is not such as to preclude an attempt to commit the offense.

For the above and foregoing reasons we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, reversed and remanded for further proceedings not inconsistent with this opinion.

BLISS, P. J., and BUSSEY, J., concur.