

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-30-1994

# Pic-a-State et al. v. Commwlth of PA, et al.

Precedential or Non-Precedential:

Docket 94-7056

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

## Recommended Citation

"Pic-a-State et al. v. Commwlth of PA, et al." (1994). *1994 Decisions.* Paper 205.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/205

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 94-7056
_____


PIC-A-STATE PA, INC.; ZACK'S FROZEN YOGURT;
SMITTY'S PLACE, INC.; K&J STATIONARY, INC.; JAMES RUSSELL

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF REVENUE;
EILEEN H. MCNULTY

EILEEN H. MCNULTY,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 93-cv-00814)

_____

Argued:  September 14, 1994

Before:  STAPLETON, LEWIS and ALARCÓN,* Circuit Judges

(Filed November 30, 1994)

_____


* Honorable Arthur L. Alarcon, United States Circuit Judge for
the Ninth Circuit, sitting by designation.

Michael A. Finio                          (Argued)
Goldberg, Katzman & Shipman
320 Market Street
Strawberry Square
P.O. Box 1268
Harrisburg, PA 17108-1268

                Attorney for Appellees


Ernest D. Preate, Jr.
Attorney General

Anne K. Fiorenza                          (Argued)
Deputy Attorney General

Calvin R. Koons
Senior Deputy Attorney General

John G. Knorr, III
Chief Deputy Attorney General
Chief, Litigation Section
Office of Attorney General of Pennsylvania
Strawberry Square, 15th Floor
Harrisburg, PA 17120

                Attorneys for Appellant


Deborah T. Poritz
Attorney General of New Jersey

Of Counsel:
Joseph L. Yannotti
Assistant Attorney General

Patricia A. Kern
B. Stephan Finkel
Deputy Attorneys General
R.J. Hughes Justice Complex
CN 117
Trenton, New Jersey 08625

                Attorneys for Amicus Curiae, State of New Jersey

Hillary Richard
Rabinowitz, Boudin, Standard,
  Krinsky & Lieberman, P.C.

Of Counsel:
Daniel R. Williams
740 Broadway, 5th Floor
New York,  New York  10003

          Attorneys for Amicus Curiae, C.H.A.N.C.E.


Lee Fisher
Attorney General of Ohio

Jay M. Patterson
Sheryl C. Maxfield
Daniel A. Malkoff
Chester T. Lyman, Jr.
Assistant Attorneys General

Of Counsel:
Richard A. Cordray
Simon B. Karas
Assistant Attorneys General
State Office Tower
30 East Broad Street
Columbus,  Ohio  43215-3428

            Attorneys for Amicus Curiae, States of Ohio,
Arizona, California, Connecticut, Delaware, Florida, Georgia,
Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maryland,
Massachusetts, Minnesota, Missouri, Montana, Nebraska, Nevada,
New Hampshire, New York, Rhode Island, South Carolina, South
Dakota, Utah, Texas, Vermont, Virginia, Washington D.C., West
Virginia and Wisconsin

---

OPINION OF THE COURT
---

ALARCÓN, <u>Circuit</u> Judge:


     Eileen McNulty, Secretary of the Pennsylvania Department of
Revenue, appeals from the district court's declaration that

section 9(c) and 9.1 of Pennsylvania's Commonwealth Act 8 of 1993 ("Act 8") is unconstitutional under the Commerce Clause and the order permanently enjoining its enforcement. We must decide whether Act 8 imposes an unconstitutional burden on interstate commerce in violation of the dormant Commerce Clause. We reverse because we conclude that since the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 ("1994 Crime Control Act"), makes the conduct of a business that sells an interest in another state's lottery a federal crime, Act 8 does not impose an unconstitutional burden on interstate commerce.

I.

Pic-A-State PA., Inc. ("Pic-A-State"), a Pennsylvania corporation, characterizes itself as a "messenger business . . . [operated] as a service to Pennsylvania citizens . . . where orders are received from persons who wish to participate in legalized and authorized lotteries of other states." Pic-A-State conducts its business in Pennsylvania through retail stores, at which customers place orders for lottery tickets from other states. The retail stores transmit the orders to purchasing agents in other states. The retail stores charge the customers one dollar for each lottery ticket purchased. The purchaser does not receive a ticket for his money. Instead, the purchaser receives a receipt showing the numbers he selected.

In response to Pic-A-State's business activities in Pennsylvania, that state's legislature enacted Commonwealth Act 8 of 1993. Section 9(c) of Act 8 provides:

> Except as provided in this act, no person shall engage in the sale or offering for sale within this Commonwealth of any interest in a lottery of another state or government whether or not such interest is an actual lottery ticket, receipt, contingent promise to pay, order to purchase or other record of such interest.

Pa. Stat. Ann. tit. 72, § 3761-9(c) (Supp. 1994). Section 9(d) provides that "[a]ny person convicted of violating this section shall be guilty of a misdemeanor and upon conviction thereof, shall be sentenced to pay a fine not exceeding two thousand dollars ($2,000)." Pa. Stat. Ann. tit. 72, § 3761-9(d) (Supp. 1994). Section 9.1 of Act 8 directs "[t]he secretary [to] enter into a compact with any other states that permit sale of Pennsylvania lottery tickets within their borders to sell those states' lottery tickets within this Commonwealth." Pa. Stat. Ann. tit. 72, § 3761-9.1 (Supp. 1994). Act 8 was signed into law on May 20, 1993.

Anticipating that Act 8 would render its business illegal in Pennsylvania, Pic-A-State filed a complaint in the United States District Court for the Middle District of Pennsylvania on June 1, 1993, alleging, inter alia, that Act 8 violates the Commerce Clause. Pic-A-State requested that the district court (1) issue a stay of the July 19, 1993 effective date of Act 8 pending resolution of this matter, (2) declare that Act 8 violates the

Commerce Clause of the United States Constitution, and (3) issue

an injunction prohibiting the enforcement of Act 8.

The district court consolidated the proceedings for a preliminary and permanent injunction pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure[1] and ordered that the matter be tried on July 9, 1993.  The parties filed briefs and the district court heard oral argument on July 9, 1993.  On July 15, 1993 the district court issued a stay barring indictments or prosecutions under Act 8 pending the entry of its final order and judgment.

On July 23, 1993, the district court entered an order declaring sections 9(c) and 9.1 of Act 8 unconstitutional and permanently enjoining their enforcement.  The district court also filed a memorandum decision setting forth its rationale.  It concluded that Act 8 was unconstitutional under the Commerce Clause because it placed an impermissibly discriminatory burden on interstate commerce.  The court noted that because Act 8 facially discriminates against interstate commerce, it was subject to heightened scrutiny pursuant to Norfolk Southern Corp. v. Oberly, 822 F.2d 388, 398 (3d Cir. 1987) ("[S]tate actions that purposefully . . . discriminate against interstate commerce . . . are given heightened scrutiny.").  The district court determined that the state's purpose in enacting Act 8 was to control fraud and theft in out-of-state lottery sales, and protect the interests of the state's senior citizens who benefit

---

[1] Rule 65(a)(2) provides, in pertinent part: "Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."  Fed. R. Civ. P. 65(a)(2).

from the profits realized from the sale of Pennsylvania lottery tickets. The district court concluded that Act 8 could not withstand heightened scrutiny because the state could enact less discriminatory regulation to accomplish its goals. Secretary McNulty filed a timely appeal from the district court's order.

Prior to the date scheduled for the oral argument of this matter before this court, Congress enacted the 1994 Crime Control Act on August 25, 1994. The 1994 Crime Control Act was signed into law on September 13, 1994. One portion of the 1994 Crime Control Act makes it a federal crime knowingly to transmit in interstate commerce information for the purpose of procuring interests in an out-of-state lottery if one is "engaged in the business of procuring for a person in 1 State such a ticket, chance, share, or interest in a lottery . . . conducted by another State (unless that business is permitted under an agreement between the States in question or appropriate authorities of those States)." Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 320905, 108 Stat. 1796, 2126. In resolving the issues raised in this appeal, we must assess the effect the 1994 Crime Control Act has upon the constitutionality of Act 8. "Our standard of review is plenary." Juzwin v. Asbestos Corp., 900 F.2d 686, 689 (3d Cir.), cert. denied, 498 U.S. 896 (1990).

II.

As an initial matter, Pic-A-State argues that it would be manifestly unjust for this court to apply the 1994 Crime Control Act in assessing the constitutionality of Act 8. Supp. Letter Memo. at 3-5. In support of this argument, Pic-A-State relies upon a line of Supreme Court cases addressing the question whether a newly-enacted law should be retroactively applied to matters pending on appeal. Pic-A-State's reliance on this principle of retroactivity law is misplaced because a determination by this court will not have a retroactive effect on Pic-A-State's past conduct.

"A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." Landgraf v. USI Film Prods., 114 S. Ct. 1483, 1499 (1994) (citation omitted). Rather, we "must ask whether the new provision attaches new legal consequences to events completed before its enactment." Id.

In the matter before us, application of the 1994 Crime Control Act to the issue presented to this court attaches no new legal consequences to the activity engaged in by Pic-A-State prior to the enactment of the 1994 Crime Control Act. In its complaint, Pic-A-State sought an injunction to bar the prospective enforcement of Act 8 following its July 19, 1993 effective date. As the Supreme Court has noted, "relief by injunction operates in futuro." Id. at 1501 (internal quotation omitted). "When the intervening statute authorizes or affects

the propriety of prospective relief, application of the new

provision is not retroactive."  Id.  Accordingly, we must

consider the impact of the 1994 Crime Control Act on the

constitutionality of Act 8.


                              III.

    During oral argument before this court, Pic-A-State stated

"it appears, upon our initial analysis, that the [1994 Crime

Control Act] pre-empt[s] the field and . . . may be another way

to affirm the district court."  We disagree.

    The "ultimate touchstone" of pre-emption analysis is the

congressional intent underlying a statute.  Cipollone v. Liggett

Group, Inc., 112 S. Ct. 2608, 2617 (1992) (internal quotation

omitted).  As the Supreme Court explained,
              Congress' intent may be explicitly
          stated in the statute's language or
          implicitly contained in its structure and
          purpose.  In the absence of an express
          congressional command, state law is
          pre-empted if that law actually conflicts
          with federal law, or if federal law so
          thoroughly occupies a legislative field as to
          make reasonable the inference that Congress
          left no room for the States to supplement it.

Id. (citations and internal quotation omitted).  An examination

of the 1994 Crime Control Act demonstrates that it does not

pre-empt Act 8.

    In amending 18 U.S.C. § 1301, Congress did not explicitly

state that its intention was to pre-empt any state legislation.

Moreover, Act 8 is not in conflict with the 1994 Crime Control

Act.  As amended, section 1301 prohibits the business of

procuring for persons in one state an interest in a lottery conducted in another state.  Act 8 also proscribes the sale within the state of Pennsylvania of an interest in another state's lottery.  The crime defined in Act 8 is totally consistent with the conduct prohibited by the 1994 Crime Control Act.

Contrary to Pic-A-State's contention, Congress has not indicated an intention to preclude all state legislation concerning the interstate sale of an interest in a lottery. Rather, the 1994 Crime Control Act expressly authorizes interstate compacts regarding the sale of interests in out-of-state lotteries.  Accordingly, we must reject Pic-A-State's contention that the 1994 Crime Control Act pre-empts Act 8.

IV.

The purpose of the Commerce Clause is to protect the national interest in facilitating commerce between the states and with foreign nations.  To implement this purpose, the Commerce Clause gives Congress the authority to define the national interest.  The Supreme Court has implemented this purpose with a number of Commerce Clause doctrines:

(a) Where Congress has acted in a particular area of interstate commerce, inconsistent state regulation is barred, Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 155-56 (1942) (collecting cases);

(b) Where Congress has acted to pre-empt state regulation of a particular area of interstate commerce, state regulation, consistent or inconsistent, is precluded, Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977) (inconsistent food labeling requirements) Pennsylvania v. Nelson, 350 U.S. 497, 502 (1956) (striking down a consistent state sedition law that would hamper federal enforcement at a time when the federal government had chosen to occupy the field); Southern Ry. Co. v. Reid, 222 U.S. 424, 440 (1912) (ratemaking and regulation of interstate transportation of goods by rail service);

(c) Even where Congress has not acted, there are areas where the national interest in uniformity is so important that no state regulation is permitted, Leisy v. Hardin, 135 U.S. 100, 119 (1890) (importation of intoxicating liquors); Cooley v. Board of Wardens, 53 U.S. 299, 315 (1851) (regulation of navigable waters); and

(d) Even where Congress has not acted to regulate a particular area of interstate commerce, states are precluded by the "dormant Commerce Clause" from enacting regulation that discriminates against interstate commerce or unduly burdens that commerce, Maine v. Taylor, 477 U.S. 131, 151-52 (1986) (upholding state ban on importation of fish bait where necessary to protect the public health); Sporhase v. Nebraska, 458 U.S. 941, 954 (1982) (finding reciprocity agreement in state ground water regulation unconstitutional because it imposes a burden on interstate commerce that outweighs any local interests served), unless such discrimination is expressly authorized by Congress,

Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 431 (1946) (holding that the McCarran Act expressly authorizes states to regulate and tax the business of insurance, even where such regulation and taxation might burden interstate commerce); Northeast Bancorp, Inc. v. Board of Governors, 472 U.S. 159, 174 (1985) (holding that federal law authorized states to decide whether to allow in-state banks to be purchased by out-of-state holding companies).

Where Congress has proscribed certain interstate commerce, Congress has determined that that commerce is not in the national interest.  Where such a determination has been made by Congress, it does not offend the purpose of the Commerce Clause for states to discriminate or burden that commerce.  As a result, in those instances where Commerce Clause challenges to state regulation have been mounted in an area where Congress has made it a crime to conduct such commerce, the courts have conducted only a two-fold inquiry, asking (1) whether federal law precludes all state legislation in that area, and (2) if state regulation is not precluded, whether the state statute conflicts with the federal provision.  California v. Zook, 336 U.S. 725, 733 (1949); Asbell v. Kansas, 209 U.S. 251, 255-56 (1908) (upholding state cattle inspection requirements which did not conflict with existing federal requirements).  In situations much like that before us, the Supreme Court has sustained the validity of state statutes found to be consistent with the federal criminal proscription.

In California v. Zook, the Supreme Court was faced with a Commerce Clause challenge to a California statute that made it a crime to sell or arrange transportation over the state's public highways with carriers that did not hold a permit from the Interstate Commerce Commission.  Zook, 336 U.S. at 726 & n.1.  The federal Motor Carrier Act contained a similar prohibition with regard to carriers operating in interstate commerce.  Id. at 726-27 & n.2.  After enunciating the principles of the dormant Commerce Clause applicable when Congress has failed to act, the Court stated:

> There is no longer any question that Congress can redefine the areas of local and national predominance . . . .  When Congress enters the field by legislation, we try to discover to what extent it intended to exercise its power of redefinition . . . .
>
> But whether Congress has or has not expressed itself, the fundamental inquiry, broadly stated, is the same: does the state action conflict with national policy?  The [rules applicable when Congress has not acted], the question of congressional "occupation of the field," and the search for conflict in the very terms of state and federal statutes are but three separate particularizations of this initial principle.

Id. at 728-29 (citations omitted).  The Court then resoundingly rejected the rule urged upon it by the respondents, "that when Congress has made specified activity unlawful, . . . state laws 'aiding' enforcement are invalid."  Id. at 729; see also Taylor v. State, 516 P.2d 1351, 1354 (Okla. Crim. App. 1973) (upholding state pandering law where its prohibition on procuring women for transportation for immoral purposes is consistent with the Mann

Act's ban on the interstate transportation of women for such purposes).  The touchstone of the test is whether the state prohibition conflicts with the scope of the federal law.  This has been the general principle expressed for state legislation

governing prostitution,[2] monopolies,[3] and lotteries.[4]  By amending

18 U.S.C. § 1301, Congress prohibited the interstate sale of

lottery interests.  Act 8 complements the federal statute by

prohibiting the sale of lottery interests within the borders of

---

[2]         In accordance with the well-settled
        principle that, in the event of conflict
        between federal legislation regulating
        interstate commerce and a state statute, the
        federal legislation prevails and the state
        legislation is of no effect insofar as it
        impinges upon the field of interstate
        commerce occupied by the federal enactment,
        state legislation relating to the
        transportation of females for purposes of
        immorality is valid only insofar as it does
        not conflict with federal legislation on the
        subject.

63 Am. Jur. 2d Prostitution § 22, at 365 (1984) (footnotes
omitted).

[3] "[T]he fact that Congress has acted to prevent restraints
on trade in interstate commerce does not necessarily invalidate
state legislation effecting substantially the same result, and
the fundamental inquiry in such instances is whether the state
legislation is in conflict with the national policy."  15 C.J.S.
Commerce § 133, at 869 (1967).

[4]         A gambling transaction involving an
        instrumentality of interstate commerce
        appears to be the subject of both federal and
        state regulation or prohibition, if there is
        no conflict between the state and federal
        legislation on the subject.  Lottery tickets
        are the subjects of commerce insofar as the
        carriage of such tickets from one state to
        another is interstate commerce which Congress
        may prohibit.

38 Am. Jur. 3d Gambling § 11 (1968) (citing The Lottery Case
(Campion v. Ames), 188 U.S. 321 (1903) (rejecting a Commerce
Clause challenge to the federal lottery ban)).

the Commonwealth of Pennsylvania.  Accordingly, we conclude that Act 8 does not violate the dormant Commerce Clause.  The judgment of the district court will be reversed.